

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-23-2006

# Stoe v. Flaherty

Precedential or Non-Precedential: Precedential

Docket No. 04-3947

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Stoe v. Flaherty" (2006). *2006 Decisions.* Paper 1664.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1664

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

———————

NO. 04-3947

———————

GEORGE P. STOE,
Appellant

v.

WILLIAM E. FLAHERTY; DAVID CARPENTER;
JAMES CARPENTER; WILLIAM SMELAS;
ROBERT SUNDERMAN; RONALD STATILE

———————

On Appeal From the United States
District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 04-cv-00489)
District Judge:  Hon. Donetta W. Ambrose

———————

Argued October 18, 2005

BEFORE:  SMITH, STAPLETON and NYGAARD,
Circuit Judges

(Opinion Filed January 23, 2006)

———

Erik Sobkiewicz (Argued)
Douglas A. Campbell
Campbell & Levine, LLC
1700 Grant Building
Pittsburgh, PA  15219
  Attorneys for Appellant

Steven S. Santoro (Argued)
Santoro & Gonzalez
407 Station Street
Pittsburgh, PA  15017
  Attorney for Appellee
  William E. Flaherty

Laura B. Hoguet
Edna Sussman (Argued)
Houget Newman & Regal
10 East 40th Street
New York, NY  10016
  and
Thomas H. May
Dickie, McCamey & Chilcote
Two PPG Place - Suite 400
Pittsburgh, PA  15222
  Attorneys for Appellees
  David O. Carpenter and D. James Carpenter

Eric B. Wolff (Argued)
David B. Florenzo
Benjamin M. Gipson
Kirkland & Ellis
655 Fifteenth Street, N.W.
Washington, D.C. 20005
  Attorneys for Appellees
  William Smelas, Robert Sunderman
  and Ronald Statile

_____

OPINION OF THE COURT

_____

STAPLETON, <u>Circuit Judge</u>.

Plaintiff-appellant George Stoe ("Stoe") brought a state-law action in state court to recover unpaid severance benefits from current and former officers of his previous employer, which is now bankrupt. The defendants removed the case to federal court pursuant to 28 U.S.C. § 1452, which provides for the removal of claims related to a bankruptcy case. In the District Court, the defendants successfully opposed Stoe's motion for mandatory abstention and ultimately won dismissal on the merits. Because we conclude that the District Court committed errors of law in ruling that the Bankruptcy Code's mandatory abstention provision was inapplicable to a case of this kind, we will remand for further consideration of whether

the District Court must abstain from hearing Stoe's case.

## I.

Stoe was formerly the president of Zinc Corporation of America ("Zinc"), a division of Horsehead Industries, Inc. ("Horsehead"). In April 2002, Stoe entered into a severance agreement with Zinc that provided for Stoe to receive a severance of $648,000, payable in biweekly installments of $13,500, for services he had rendered to the company prior to his departure. Zinc and Horsehead made all payments required by the severance agreement until Horsehead filed for Chapter 11 bankruptcy in the United States District Court for the Southern District of New York in August 2002. The Bankruptcy Code prohibited Horsehead from making further payments to Stoe after the filing of the petition. See Belcufine v. Aloe, 112 F.3d 633, 634 (3d Cir. 1997) (noting that filing of a Chapter 11 petition bars the payment of pre-petition claims by the company).

Stoe brought an action to recover the unpaid severance payments under Pennsylvania's Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 et seq. ("WPCL"), against David Carpenter, Executive Chairman and CEO of Horsehead, James Carpenter, President of Horsehead, William Smelas and Robert Sunderman, both former Executive Vice Presidents of Zinc, Ronald Statile, former Chief Financial Officer of Zinc, and William Flaherty, former Chairman and CEO of Zinc. Under the WPCL, when a corporation fails to pay wages and benefits that it owes its employees, the corporation's top officers can be held personally liable for the non-payments. Belcufine,

4

117 F.3d at 634. Stoe did not name Horesehead as a defendant in the suit, but if Stoe is successful, the defendants will be entitled to indemnification from Horsehead, pursuant to Horsehead's by-laws.

After removing Stoe's state court action to federal court, the defendants moved to dismiss Stoe's action under Fed. R. Civ. P. 12(b)(6), or, in the alternative, to transfer the action to the Bankruptcy Court. Stoe moved to remand the action to state court, or, in the alternative, for both permissive and mandatory abstention.

The District Court denied Stoe's motion to remand or to abstain. With respect to mandatory abstention, the court made two rulings. First, it ruled that "abstention cannot apply to removed cases." App. at 9. Second, the District Court concluded that even if mandatory abstention applied as a general matter to removed cases, it would not apply to Stoe's case because mandatory abstention requires that the state law claim be only "related to" the bankruptcy proceeding, and not "arise under" the Bankruptcy Code or "arise in" a bankruptcy case. In the District Court's view, Stoe's claim was "inextricably intertwined with the Bankruptcy Code and would not exist, but for, the bankruptcy filing." As a result, the District Court held that Stoe's claim "'arises in' the bankruptcy proceeding." Id. at 10.

After Stoe responded to the defendants' motions to dismiss, the District Court ruled, following our decision in Belcufine v. Aloe, 112 F.3d 633 (3d Cir. 1997), that Stoe did not state a valid claim under the WPCL. Stoe does not challenge the

merits of that ruling before us, but rather argues that the District Court was required to abstain from hearing his case and consequently lacked jurisdiction to enter the order of dismissal.

## II.

We have jurisdiction to review the District Court's order dismissing Stoe's action pursuant to 28 U.S.C. § 1291. In addition, the District Court's prior order denying Stoe's motion for mandatory abstention is reviewable under 28 U.S.C. § 1334(d). We are cognizant that decisions not to remand are "not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of [title 28]." 28 U.S.C. § 1452(b). By contrast, appeals of decisions not to exercise mandatory abstention pursuant to § 1334(c)(2) are explicitly permitted under § 1334(d). Stoe appeals the District Court's decision not to abstain and we accordingly consider only the propriety of that decision, not the District Court's decision regarding remand. As the Second Circuit noted recently, "If we determine. . . the district court erred by not abstaining, the district court properly could both abstain and remand when this lawsuit is returned to it. However, that reality would not alter the fact that we would have reviewed only the decision not to abstain." Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 445 (2nd Cir. 2005). The District Court's determination that the mandatory abstention provision of § 1334(c)(2) does not apply to removed cases is a question of statutory interpretation that we review de novo. Tavarez v. Klingensmith, 372 F.3d 188, 189 n.1 (3d Cir. 2004). We similarly exercise plenary review over the legal question of whether Stoe's claim is a "core" proceeding. See Mt. McKinley, 399 F.3d at 447.

6

III.

Section 1334 of title 28 provides, in pertinent part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c). . . (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334.

Thus, upon a timely motion under § 1334(c)(2), a district court _must_ abstain if the following five requirements are met:

7

(1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

The first requirement is not disputed in this appeal. Stoe's claim is plainly based on Pennsylvania's WPCL and he does not assert a federal cause of action. The District Court's blanket assertion that mandatory abstention does not apply to removed cases relates to the requirement that an action "is commenced" in a state forum. Accordingly, we address that requirement first.

## A.

In support of the proposition that mandatory abstention cannot apply to removed cases, the defendants insist that "the fundamental premise" of the concept of abstention is the existence of a parallel proceeding in whose favor the court can abstain, and, that in the context of removed cases, there is no such ongoing proceeding. This is confirmed, in the defendants' view, by the use of the present tense in § 1334(c)(2)'s requirement that "an action is commenced, and can be timely adjudicated, in a State forum." 28 U.S.C. § 1334(c)(2) (emphasis supplied). The defendants add that applying § 1334(c)(2) in a situation involving no parallel proceeding turns it into a remand provision which would either be inconsistent with or obviate the need for the separate bankruptcy removal

8

and remand provisions in 28 U.S.C. § 1452. We are not persuaded.

First, the existence of an ongoing state proceeding is not inherent in the nature of abstention. Burford, Pullman, and Thibodaux abstention, as well as other forms of abstention, apply without regard to the existence of an ongoing proceeding. Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959) (upholding abstention in eminent domain proceeding removed from state court); Burford v. Sun Oil Co., 319 U.S. 315 (1943) (requiring abstention and dismissal of case raising uncertain questions of state law in favor of resolution through centralized state administrative procedures); R.R. Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941) (requiring abstention when state law is uncertain and clarification of state law in subsequent state court proceeding might obviate need for federal constitutional ruling); see generally Erwin Chemerinsky, Federal Jurisdiction § 12.2 (4th ed. 2003) (discussing various federal abstention doctrines).

Nor does the text of § 1334(c)(2) favor the defendants' position. On its face, that text mandates abstention in removed cases as well as those filed initially in federal court. A removed case "is commenced" in the state court and satisfies that requirement. "Is commenced" simply cannot reasonably be read to require both commencement and ongoing pendency in state court. In that regard, § 1334(c)(2) stands in sharp contrast to § 1334(e), which refers to the "district court in which a case under title 11 is commenced or is pending. . . ." 28 U.S.C. § 1334(e) (emphasis added). Congress could have likewise required that there exist a "pending" case in state court as a prerequisite to

mandatory abstention, but it opted not to do so.

Significantly, the defendants have suggested no persuasive reason why Congress might have been motivated to make a distinction in § 1334(c)(2) between removed cases and others. Section 1334(c)(2) is based on comity and, on its face, reflects a congressional judgment that a party who wishes to litigate a state claim in a state court, but finds himself in a federal court solely because the controversy is related to a bankruptcy, should be able to insist upon a state adjudication if that will not adversely affect the bankruptcy proceedings.[1]

_____

[1]The legislative history of § 1334(c)(2) consists primarily of the statements of individual legislators. It tends to confirm, however, that, out of deference to state courts and concern over the constitutional validity of the broad statutory reach of bankruptcy jurisdiction, Congress sought to give effect to the preferences of litigants who prefer a state forum, when state court adjudication would not unduly interfere with the administration of the bankruptcy estate. See, e.g., 130 Cong. Rec. 13063, 13066-67 (1984) (statement of Sen. Hatch) (supporting Senate bill's broader abstention provision and noting that "for reasons dictated by sound constitutional policy as well as judicial economy and procedural fairness to claimants, this bill contains a requirement that a Federal district court involved in a bankruptcy matter honor the request of a party to that proceeding to have wholly State law issues resolved in State courts"); 130 Cong. Rec. 17152 (statement of Sen. Heflin) (supporting broad abstention to give effect to right of litigant to state forum); 130 Cong. Rec. 17154 (statement of Sen. DeConcini) (arguing that proposed narrower abstention

Given that judgment, we can perceive no reason why Congress could have decided to deny mandatory abstention to a party who filed his state claim in a state court, only to have it removed to a federal court.

Finally, mandatory abstention is not in conflict with 28 U.S.C. § 1452, which governs removal and remand in

provision "reflect[s] a balance between the need for an effective and efficient bankruptcy court system. . . and the concerns of those who find themselves involuntarily involved in a bankruptcy proceeding"); 130 Cong. Rec. 17157 (statement of Sen. Dole) ("[C]omity between Federal and State courts depends upon the mutual respect that each of those divisions of the national judiciary has for the jurisdiction of the other. At the same time, however, I believe that it is equally essential that a bankruptcy court–or district court hearing a bankruptcy proceeding–have the ability to expeditiously dispose of all claims that may be pressed by or against a debtor."); see also Susan Block-Lieb, Permissive Bankruptcy Abstention, 76 Wash. U. L.Q. 781, 809-13 (1998) (reviewing legislative history); 2 Thomas D. Crandall, et al., The Law of Debtors and Creditors § 11.9 at 11-26 (rev. ed. 2005) ("Section 1334(c)(2) also represents a broader 'state's rights' concern for deference to and respect for state courts (as well as opposition to 'encroaching federalism'), to the extent that such deference can be made consistent with orderly and timely bankruptcy administration."). This legislative intent affords no basis for distinguishing between removed cases and those cases brought originally in federal court.

11

bankruptcy cases. That section provides:

> (a) A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

> (b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. . . .

28 U.S.C. § 1452. The defendants argue that § 1452(b) provides the exclusive means by which a federal court can remand a removed bankruptcy-related case. But section 1334(c)(2) does not purport to interfere with a court's authority to remand under § 1452(b). Rather, § 1334(c)(2) governs only whether a district court must abstain from hearing a case. Once a district court determines that it either must abstain from hearing a removed case pursuant to 1334(c)(2) or should abstain pursuant to 1334(c)(1)'s permissive abstention provisions, it can consider whether there is reason for the suit to proceed in state court. If so, there will be an "equitable ground" justifying remand under § 1452(b). See Parrett v. Bank One, N.A. (In re Nat'l Century Fin. Enters. Inv. Litig.), 323 F.Supp.2d 861, 878 (S.D. Oh. 2004) (noting that mandatory abstention provides equitable ground supporting remand under § 1452(b)); Personette v. Kennedy (In re Midgard Corp.), 204 B.R. 764, 775 & 775-76 n.13 (B.A.P. 10th Cir. 1997) (same); Murray v. On-Line Bus. Sys., Inc. (In re Revco D.S., Inc.), 99 B.R. 768, 776 (N.D. Oh. 1989) (same); Chiodo v. NBC Bank-Brooks

12

Field (In re Chiodo), 88 B.R. 780, 785 (W.D. Tex. 1988) (same); see also Joseph C. Cavender, Comment, On the Need to Conduct Abstention Analysis in Bankruptcy-Related Cases Removed to Federal Court, 71 U. Chi. L. Rev. 289, 290 (2004) (arguing that abstention provisions, if met, should provide "equitable ground" justifying remand). There is nothing inconsistent about one statutory provision governing abstention and a second provision governing remand.

We also find unpersuasive defendants' related argument that if mandatory abstention applies to removed cases, the abstention provision will swallow the removal provision. Nearly every removed bankruptcy-related case, they argue, will simply be returned to state court when the district court determines that mandatory abstention applies. However, the requirement of "timely adjudication" in a state forum can serve to retain a significant number of cases in federal court. Cavender, supra, at 305-07.[2] Moreover, the removal provision of § 1452(a) applies not only to "related to" cases, but also to "arising in" and "arising under" cases, while the mandatory abstention provision applies only to "related to" cases. Compare 28 U.S.C. § 1452 (governing removal and remand for all claims for which there is jurisdiction under § 1334) with 28 U.S.C. §

_____

[2]By contrast, if mandatory abstention does not apply to removed cases, then mandatory abstention will almost never apply. Cavender, supra, at 300-02. Simultaneous declaratory judgment actions and enforcement actions in the state and federal court would apparently be the limit of § 1334(c)(2)'s application.

13

1334(c)(2) (providing for mandatory abstention only in "related to" cases). Therefore, the removal provision still clearly has effect with respect to "arising in" and "arising under" cases. The mandatory abstention provision would consequently not swallow the removal provision.

Four of the five courts of appeals to have considered the issue of whether § 1334(c)(2) can apply to removal actions agree with the conclusion we here reach. See Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 446-47 (2nd Cir. 2005) (rejecting argument that mandatory abstention does not apply in removal proceedings); Christo v. Padgett, 223 F.3d 1324, 1331 (10th Cir. 2000) (concluding that application of mandatory abstention to removed cases "better comports with the plain language of § 1334(c)(2) as well as Congress's intent that mandatory abstention strike a balance between the competing interests of bankruptcy and state courts"); Robinson v. Michigan Consolidated Gas Co., 918 F.2d 579, 584 n.3 (6th Cir. 1990) ("The abstention provisions of 28 U.S.C. § 1334(c)(2) apply even though a case has been removed pursuant to 28 U.S.C. § 1452."); Southmark Corp. v. Coopers & Lybrand (Matter of Southmark Corp.), 163 F.3d 925, 929 (5th Cir. 1999) ("[W]e note, only to reject out of hand, [the] assertion that statutory abstention does not apply to cases removed to federal court on the basis of bankruptcy jurisdiction."); but see Schulman v. California (In re Lazar), 237 F.3d 967, 981-82 (9th Cir. 2001) (section 1334(c)(2) "simply inapplicable" because after removal no other related state proceeding exists).

In conclusion, the mandatory abstention provision of 28 U.S.C. § 1334(c)(2) applies, by its terms, to removed cases and

14

is not inconsistent with the removal and remand provisions of § 1452. Stoe meets the requirement that his action be "commenced" in a state court of appropriate jurisdiction.

B.

Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases "under" title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. In re Combustion Eng'g, Inc., 391 F.3d 190, 225 (3d Cir. 2005). The category of cases "under" title 11 "refers merely to the bankruptcy petition itself." Id. at 225-26 n.38 (quotation and citation omitted). A case "arises under" title 11 "if it invokes a substantive right provided by title 11." Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.), 72 F.3d 1171, 1178 (3d Cir. 1996). Bankruptcy "arising under" jurisdiction is analogous to 28 U.S.C. § 1331, which provides for original jurisdiction in district courts "of all civil actions arising under the Constitution, laws, or treaties of the United States." 1 Collier on Bankruptcy § 3.01[4][c][i] at 3-21-22 (15th ed. rev. 2005); see also Wood v. Wood (Matter of Wood), 825 F.2d 90, 96-97 (5th Cir. 1987). The category of proceedings "arising in" bankruptcy cases "includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens." 1 Collier on Bankruptcy § 3.01[4][c][iv] at 3-31 (quotations and footnotes omitted). Proceedings "arise in" a bankruptcy case, "if they have no existence outside of the bankruptcy." United States Trustee v. Gryphon at the Stone Mansion, Inc., 166 F.3d 552, 556 (3d Cir. 1999). Finally, a proceeding is "related to" a bankruptcy case if

15

"the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." In re Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984); see also In re Federal-Mogul Global, Inc., 300 F.3d 368, 381 (3d Cir. 2002) (noting that Pacor "clearly remains good law in this circuit" in this respect).[3]

The question presented here is whether Stoe's claim "arises under" title 11, "arises in" a bankruptcy case, or is merely "related to" a bankruptcy case. This is equivalent to the question whether Stoe's claim is a "core" proceeding or a "non-core" proceeding within the meaning of 28 U.S.C. § 157. In re Combustion Eng'g, Inc., 391 F.3d at 225 ("Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings.").

The defendants insist that Stoe's claim both "arises under" the Bankruptcy Code and "arises in" a bankruptcy case. Third Circuit precedent mandates that it does neither.

Whether a proceeding is a "core" proceeding that "arises under" title 11 depends upon whether the Bankruptcy Code

_____

[3]For "related to" jurisdiction to exist at the post-confirmation stage, "the claim must affect an integral aspect of the bankruptcy process – there must be a close nexus to the bankruptcy plan or proceeding." Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 167 (3d Cir. 2004).

creates the cause of action or provides the substantive right invoked. Halper v. Halper, 164 F.3d 830, 836, 836-37 n.7 (3d Cir. 1999). As the District Court here acknowledged, Stoe's "sole claim is based upon Pennsylvania's Wage Payment and Collection Law." App. at 10. Thus, it "arises under" the WPCL and not under the Bankruptcy Code. The defendants' principal argument to the contrary is based on our decision in Belcufine v. Aloe, 112 F.3d 633 (3d Cir. 1997). Nothing in that case, however, suggests that a claim like Stoe's arises under the Bankruptcy Code.

In Belcufine, we construed the WPCL, as a matter of Pennsylvania law, to preclude liability for corporate managers when the corporation's non-payment of wages is required by the operation of federal bankruptcy law. We reasoned that

> [t]he liability of corporate managers under the WPCL is a 'contingent' liability, i.e., it is contingent on the corporation's failure to pay debts that it owes. Once a corporation files a Chapter 11 petition, however, it is obligated to pay wages and benefits only to the extent required by the bankruptcy workout. Hence, when a corporation under Chapter 11 fails to make payments that the Bankruptcy Code does not permit, the contingency needed to trigger the liability of corporate managers under the Pennsylvania WPCL never occurs.

Id. at 639 (citations omitted). While federal bankruptcy law certainly informed our analysis, our decision in Belcufine was

17

clearly based on a construction of Pennsylvania law. Id. at 640 n.9 ("Our decision here. . . is predicated solely on an interpretation of Pennsylvania law on the WPCL.").

The fact that federal bankruptcy law is implicated as a defense to Stoe's claim, does not change the fact that Stoe's claim itself does not "arise under" title 11. The Bankruptcy Code did not create Stoe's cause of action. Constitutional "arising under" federal question jurisdiction may, of course, be implicated by a federal defense to a state law claim. See Osborn v. Bank of the United States, 22 U.S. (9 Wheat) 738 (1824). But bankruptcy "arising under" jurisdiction is analogous to the narrower statutory "arising under" federal question jurisdiction of 28 U.S.C. § 1331. Matter of Wood, 825 F.2d at 96-97; 1 Collier on Bankruptcy § 3.01[4][c][i] at 3-22. Certainly, nothing in Belcufine suggests that Stoe could have filed his claim in a federal district court, had Horsehead not been in bankruptcy.

Nor can we accept the District Court's conclusion that Stoe's claim "arises in" a bankruptcy case. It reasoned that, because Horsehead stopped making payments as a consequence of its bankruptcy, Stoe's claim for severance benefit "would not exist, but for the bankruptcy filing." App. at 10. But claims that "arise in" a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case. See Halper, 164 F.3d at 836 (proceeding is "core" "if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case") (quotation omitted) (emphasis added); 1 Collier on Bankruptcy § 3.01[4][c][iv] at 3-31 (noting that "administrative matters" such as allowance and disallowance of claims, orders in respect to

18

obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, orders permitting the assumption or rejection of contracts, are the principal constituents of "arising in" jurisdiction, and that "[i]n none of these instances is there a "cause of action" created by statute, nor could any of the matters illustrated have been the subject of a lawsuit absent the filing of a bankruptcy case"). Claims under the WPCL can clearly exist outside the context of bankruptcy cases. The only connection that Stoe's claim has to the Horsehead bankruptcy is that, in the event that Stoe is successful in recovering damages for unpaid wages from the defendants here, those defendants will likely seek indemnification from Horsehead. In that sense it is "related to" the Horsehead bankruptcy because it could "conceivably" have an effect on the estate being administered.

We find the situation in Halper v. Halper, 164 F.3d 830 (3d Cir. 1999), indistinguishable from the one here presented. Our decision there mandates a conclusion that Stoe's claim is not a "core" proceeding. In Halper, the plaintiff, Irwin Halper, one of four prior owners of Halper Bros., Inc. ("HBI"), sued his cousin, Barry Halper, also an owner of HBI. 164 F.3d at 833-34. Irwin had entered into a contract with HBI which provided for ongoing payments to Irwin. Id. Barry and Irwin entered into a Guaranty and Indemnity Agreement by which Barry personally guaranteed HBI's payments to Irwin under the contract. Id. HBI subsequently entered bankruptcy. Id. at 834. Irwin sued in state court to enforce Barry's personal guarantee, and Barry removed to the Bankruptcy Court. We ruled that Irwin's action to enforce Barry's personal guarantee–"a state law claim for breach of a pre-bankruptcy contract to which the debtor was not

19

a party"–was not a "core" proceeding because it did not "invoke a substantive provision of the bankruptcy code," nor was it "the type of claim that can only be entertained in bankruptcy." Id. at 838. We explained:

> [T]hese claims involve a dispute between two parties, neither of whom is the debtor, over a prepetition contract between them. They must be resolved under New Jersey guaranty and contract law and could have been brought in state court. While Barry asserts that New Jersey law would not enforce the Guaranty if HBI's underlying obligation is void under federal bankruptcy law, this does not render these claims core proceedings.

Id. at 838 (emphasis added). However, the claim nevertheless fell within the Bankruptcy Court's jurisdiction as a "related to" proceeding because it could "conceivably affect" HBI's estate in bankruptcy. Id.

Stoe's claim against the defendants is on all fours with Irwin's claim against Barry in Halper. Both claims involve prepetition obligations between a nondebtor-plaintiff and a third party whose obligation to the plaintiff was contingent upon the debtor's failure to meet its obligations to the plaintiff. Both are state law claims where liability under state law may be affected by the operation of the Bankruptcy Code. The sole difference between the two cases is that Stoe's guarantee claim is based upon a state statute and Irwin's guarantee claim is based on state common law (i.e., contract law). In the context

20

of a "core"/ "non-core" issue, this is a distinction without a difference.

Stoe's claim is "related to" a bankruptcy case, but it does not "arise under" the Bankruptcy Code or "arise in" a bankruptcy case.

## C.

One set of defendants, for the first time on appeal, proposes an alternative basis for federal court jurisdiction in 28 U.S.C. § 959(a). That statute provides:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a). But even were we to consider this argument, it fails for the same reason that Stoe's claim is not a "core" claim, because the defendants are not being sued as trustees or debtors in possession but in their capacity as officers of Horsehead due to their contingent liability under the WPCL.

## D.

21

The District Court did not reach the question of whether the proceeding on Stoe's state claim "can be timely adjudicated[] in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). We will remand for consideration of that question in the first instance. See Mt. McKinley, 399 F.3d at 450 (remanding for consideration of "timely adjudication" when district court had failed to reach the question due to erroneous rulings regarding whether proceeding was "core" and whether abstention applied to removed cases).[4]

The defendants urge that we can decide "timely adjudication" on the record before us. The thrust of their argument is that: (1) the question of timely adjudication involves a comparison between the speed of resolution in state and federal court; (2) the case is already resolved in federal court

---

[4]In his motion for abstention before the District Court, Stoe asserted, based on information secured from "Calendar Control at the State Court," that "the State Court does not have a backlog" and can "hear Plaintiffs' action in a timely manner." App. at 103. While Stoe did not file an affidavit in support of that assertion, none of the defendants challenged the assertion during proceedings in the District Court. Similarly, none of them challenge this assertion here or argue that Stoe presented no prima facie case on this issue. Accordingly, while Stoe had the burden of proving his right to mandatory abstention, it is appropriate for us to remand to the District Court for consideration of the "timely adjudication" issue in the first instance.

22

because the merits of the case are clear under <u>Belcufine</u> and Stoe has not seriously appealed this determination; (3) therefore, relatively speaking, the case cannot be timely adjudicated in state court.  We conclude, however, that timeliness in this context must be determined with respect to needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed.  1 <u>Collier on Bankruptcy</u> § 3.05[2] at 3-72 ("The few cases considering the issue hold that timeliness must be referenced against the needs of the title 11 case, rather than against an absolute time guideline.").

IV.

The District Court's judgment will be reversed, and this matter will be remanded to the District Court for further proceedings consistent with this opinion.