In re KRYSTAL CADILLAC–OLDS-
MOBILE–GMC TRUCK, INC.,
Debtor.

General Motors Corporation, Plaintiff,

v.

Krystal Cadillac–Oldsmobile–GMC
Truck, Inc., and Lawrence V.
Young, Trustee, Defendants.

Bankruptcy No. 1–94–bk–01547.
Adversary No. 1–00–ap–00249.

United States Bankruptcy Court,
M.D. Pennsylvania.

March 28, 2006.

James A. Mollica, Sewickley, PA, Timothy Murray, Murray Hogue and Lannis, Pittsburgh, PA, for Plaintiff.

Lawrence V. Young, CGA Law Firm, York, PA, William C. Cramer, Chambersburg, PA, for Defendants.

## *OPINION*[1]

JOHN J. THOMAS, Bankruptcy Judge.

Presently before this Court is the disposition of the Defendant's [Krystal Cadillac Oldsmobile–GMC Truck, Inc., hereinafter "Krystal Cadillac"] Objection to Plaintiff's [General Motors Corporation, hereinafter "GM"] *Application for Permission to Remove Signage Bearing the GM name and Other Marks.* Resolution of this dispute requires a determination of this Court's post-confirmation jurisdiction. For the reasons set forth herein, the Defendant's Objection shall be sustained and the action shall be dismissed for lack of jurisdiction.

### *Procedural History*

On April 15, 2005, GM petitioned this Court for an *Application for Permission to Remove Signage Bearing the GM Name and Other Marks.* The Application was based on a settlement between the Chapter 11 Trustee and GM terminating a 1990 franchise agreement between GM and Krystal Cadillac. Defendant answered and raised defenses predicated on a post-confirmation 2000 franchise agreement executed between GM and Krystal Cadillac. The Defendant also objected to GM's Application on the grounds that this Court lacks jurisdiction to resolve this post-confirmation non-core proceeding.

### *Background*

Krystal Cadillac filed for Chapter 11 bankruptcy on September 8, 1994. Among the assets of Krystal Cadillac's estate were Dealer Sales and Service Agreements ("Franchise Agreements") between Krystal Cadillac and GM. *See Krystal Cadillac Oldsmobile GMC Truck, Inc. v. GMC,* 142

F.3d 631, 638 (3d Cir.1998) (Third Circuit finding that the 1990 franchise agreements were property of the estate as of the petition's filing date). The first franchise agreement between the parties was executed in 1987 and provided that Krystal Cadillac was to sell GM products for a three year period. In 1990, new five year agreements were executed, ("1990 Franchise Agreements"), to take effect in November of 1990. The Franchise Agreements contained a provision allowing GM to remove certain signage if the contracts were terminated.

In October of 1997, Krystal Cadillac's Amended Plan of Reorganization was confirmed. The confirmed plan assumed the 1990 Franchise Agreements. *See* Amended Plan of Reorganization, Case No. 1–94–bk–01547 at ¶ 9.01 (Doc. 195). On August 17, 2000, GM filed an adversary Complaint seeking a declaration that the 1990 Franchise Agreements were terminated, and the Trustee began negotiating with GM to resolve the conflict. On October 2, 2000, the Trustee filed a Motion to Sell the 1990 Franchise Agreements to GM for $37,500, coupled with a Motion to Compromise and Settle Litigation GM had filed to terminate the agreements for the same $37,500. At a November 30, 2000 hearing it was revealed that Krystal Cadillac had executed new franchise agreements with GM on October 25, 2000, ("2000 Franchise Agreements"), for a new five year period beginning November 1, 2000.

On March 9, 2004, this Court granted the Trustee's *Motion to Compromise and Settle Litigation,* which provided for the termination of the 1990 Franchise Agreements in exchange for $37,500.

On April 15, 2005, GM petitioned this Court for an order granting them permission to remove signage bearing the GM name from the Krystal Cadillac premises.

---

**1.** Drafted with the assistance of Kathryn F.     Evans, Law Clerk.

GM asserted this Court had jurisdiction to enter such an order since it was "related to" the bankruptcy and could be classified as a "housekeeping order" permissible under the inherent and ongoing jurisdiction courts retain to effectuate their own orders pursuant to *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). GM alternatively asserts this Court has jurisdiction pursuant to the jurisdiction retention provision in Krystal Cadillac's confirmed plan.[2] Defendants objected to this Court granting GM permission to remove signs from the Krystal Cadillac premises. Defendants maintain that this Court lacks jurisdiction to hear the instant action because it is a non-core proceeding and is not "related to" the bankruptcy proceeding under 28 U.S.C. § 1334(b).

*Analysis*

### 1. Jurisdiction Retention Provision

■ One of GM's contentions is that this Court has jurisdiction pursuant to a retention of jurisdiction provision in Krystal Cadillac's confirmed plan. *See* Amended Plan, Case No. 1–94–bk–01547, at ¶¶ 10.01 & 14.01 (Doc. 195). However, the Third Circuit has held "if there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant." *In re Resorts Int'l, Inc.,* 372 F.3d 154, 161 (3d Cir.2004). Thus the inquiry becomes, notwithstanding the jurisdiction retention provision, does this Court have jurisdiction to resolve this dispute under § 1334?

### 2. Jurisdiction Under 28 U.S.C. § 1334

The Third Circuit has established that a bankruptcy court's jurisdiction "extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under title 11." *Stoe v. Flaherty,* 436 F.3d 209 (3d Cir.2006), *citing In re Combustion Eng'g, Inc.,* 391 F.3d 190, 225 (3d Cir.2004); *see also* 28 U.S.C. § 1334(a) and (b). The first three categories are considered to be "core" matters, whereas the fourth and final category is considered to be non-core. *See In re Resorts Int'l Inc.,* 372 F.3d at 162.

#### a. Core Proceedings

■ The Third Circuit has defined core proceedings as those that either arise under title 11 and "invoke a substantive right provided by title 11," or a proceeding that arises in a case under title 11 which "by its nature could arise only in the context of a bankruptcy case." *Id.* at 162–63. In the instant case, GM's cause of action did not "arise under" the Bankruptcy Code. The Bankruptcy Code did not create GM's cause of action, nor does GM assert a substantive right stemming from title 11. The second question to address is whether the instant action is something that 'arises in' the context of a bankruptcy case. The Third Circuit has recently reiterated that "claims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *Stoe,* 436 F.3d at 218. Here, although the particular factual circumstances of the case involve the Krystal Cadillac bankruptcy, the essence of the claim revolves around a contractual analysis juxtaposing the signage rights of Krystal Cadillac under the 2000 Franchise Agreement against GM's

---

**2.** The retention provision provides that this Court would "retain jurisdiction to determine the actions necessary to cure and assume any franchise agreement or executory contract and approve their sale." *See* Amended Plan, Case No. 1–94–bk–01547 at ¶¶ 10.01 & 14.01 (Doc. 195).

rights to remove certain signs after the termination of the 1990 Franchise Agreement. Determining the scope of GM's rights under a settlement agreement is not an issue which is especially unique to the bankruptcy context. Presumably, to resolve the instant action a court would use primarily contract law, as opposed to bankruptcy law. Additionally, in *Stoe,* the Third Circuit, when analyzing whether a claim "arose in" the bankruptcy case for purposes of § 1334, found persuasive the fact that the claim could "clearly exist outside the context of bankruptcy cases." [3] *Id.* at 218. Similarly, this contract claim could clearly exist outside the context of a bankruptcy case. As such, this is not a core proceeding for purposes of § 1334.

### b. Non–Core Proceedings & "Related To" Jurisdiction

■ Despite having established this matter is not a core proceeding, a bankruptcy court may still have jurisdiction over a matter if it finds that the matter is "non-core" but "related to" the bankruptcy. *See In re Resorts Int'l Inc.,* 372 F.3d at 163. "Non-core 'related to' jurisdiction is the broadest of the potential paths to bankruptcy jurisdiction." *Id., quoting Donaldson v. Bernstein,* 104 F.3d 547, 552 (3d Cir.1997). The Third Circuit has adopted the *Pacor* test which states that a bankruptcy court will have jurisdiction to hear a proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Resorts Int'l, Inc.,* 372 F.3d at 165, *quoting Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984).

■ Despite the fact that "related to" jurisdiction normally provides the jurisdictional foundation for a wide berth of matters, it is important to remember this Court is analyzing jurisdiction from the unique context of a post-confirmation proceeding. As established by the Third Circuit, "after confirmation of a chapter 11 plan, retention of bankruptcy jurisdiction can be problematic." *In re Resorts Int'l, Inc.,* 372 F.3d at 165, *citing Bank of La. v. Craig's Stores of Tex., Inc.(In re Craig's Stores of Tex., Inc.),* 266 F.3d 388, 391 (5th Cir.2001) and *In re Fairfield Cmtys., Inc.,* 142 F.3d 1093, 1095–96 (8th Cir.1998). The Third Circuit has held that "at the post confirmation stage, the claim must affect an integral aspect of the bankruptcy process-there must be a close nexus to the bankruptcy plan or proceeding." *In re Resorts Int'l. Inc.,* 372 F.3d at 167. A close nexus in the post-confirmation context may be found when "a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan." *Id.* at 168.

■ The instant action does not have the requisite nexus to the bankruptcy plan or process to merit a finding of post-confirmation "related to" jurisdiction. Resolution of this contractual dispute would not involve or even require an interpretation of Krystal Cadillac's confirmed plan. Resolution of the instant action requires interpretation of the settlement agreement and the 2000 Franchise Agreement which is, at best, tangential to the confirmed plan. Additionally, resolution of this action would not substantially affect the implementation, consummation, execution or administration of the Krystal Cadillac Reorganization Plan. Again, this is not a dispute over the confirmed plan, it is a dispute over two conflicting Franchise Agreements which are peripheral to the reorganization plan. Furthermore, this Court has held that its jurisdiction to resolve disputes over the 2000 Franchise

---

**3.** In *Stoe,* the Third Circuit analyzed whether it had jurisdiction over a former employee's state law action under the WCPL to recover unpaid severance benefits from current and former officers of a former employer who went bankrupt. *Id.* at 218.

Agreement is tenuous. *See In re Krystal Cadillac Oldsmobile–GMC Truck, Inc.(Krystal Cadillac Oldsmobile–GMC Truck, Inc.)*, Adversary No. 1–00–ap–00249, slip op. at 9–10 (Bankr.M.D.PA. Mar. 9, 2004). This Court has determined that because the 2000 Franchise Agreement was entered into post-confirmation, it was never a part of the administration of the estate, and thus it had no impact on the implementation of the confirmed plan. *See Id.* As such, the nexus between the bankruptcy plan/process and a resolution of conflicting signage rights in the 1990 and 2000 Franchise Agreements is attenuated and insufficient to merit retaining jurisdiction to resolve.

### 3. Jurisdiction to Effectuate a Previous Order

General Motors Corporation contends this Court has jurisdiction to decide this matter pursuant to a bankruptcy court's inherent retention of jurisdiction to enforce its own orders per the reasoning of the Supreme Court in *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). However, the 1934 date of the *Local Loan* decision is telling. The Supreme Court in *Local Loan,* when analyzing whether a bankruptcy court retained equitable jurisdiction to enforce a previous order, interpreted not the current Bankruptcy Code but rather the law in effect in 1934 which was as follows:

> Courts of bankruptcy are constituted by sections 1 and 2 of the Bankruptcy Act, amended by Act May 27, 1926 (U.S.C., title 11, ss 1 and 11 (11 U.S.C.A. ss 1, 11)), and are invested 'with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings.' *Local Loan Co.,* 292 U.S. at 240, 54 S.Ct. 695.

■ The current Bankruptcy Code's 28 U.S.C. § 1334 is more authoritative than the former Bankruptcy Act with regard to the scope of a bankruptcy court's jurisdiction. As such, although historically bankruptcy courts under the former Bankruptcy Act may have retained jurisdiction to enforce their orders, modern law is not as generous. As discussed above, this matter is not within the Court's jurisdiction to adjudicate under § 1334 and § 157, and as such this case must be dismissed.

### CONCLUSION

In sum, Defendant's objections to the Application are sustained and this matter is dismissed for lack of jurisdiction.

An Order will follow.

### ORDER

For those reasons indicated in the Opinion filed this date, **IT IS HEREBY**

**ORDERED** that Debtor's request (contained within their Brief at Doc. # 71) to Dismiss the Complaint of General Motors Corporation is granted.