

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-24-2007

# In Re: Seven Fields

Precedential or Non-Precedential: Precedential

Docket No. 06-3658

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"In Re: Seven Fields " (2007). *2007 Decisions*. Paper 284.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/284

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-3658

———

IN RE: SEVEN FIELDS DEVELOPMENT CORPORATION,

Debtor

MARY GERUSCHAT; DOLORES SPENEY; ANTOINETTE
MOROCCO; and DONNA M. BUXTON,

Appellants

v.

ERNST YOUNG LLP; CHARLES MODISPACHER

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 05-1527)
District Judge: Honorable Gary L. Lancaster

———

Argued June 28, 2007

BEFORE: SMITH and GREENBERG, Circuit Judges,
and POLLAK, District Judge*

(Filed: October 24, 2007)

———

Vincent A. Coppola (argued)
Pribanic & Pribanic
513 Court Place

———

*The Honorable Louis H. Pollak, Senior Judge of the United States
District Court for the Eastern District of Pennsylvania, sitting by
designation.

First Floor
Pittsburgh, PA 15219

Attorneys for Appellants

William H. Schorling (argued)
Samuel W. Braver
Stanley J. Parker
Christopher P. Schueller
Buchanan Ingersoll & Rooney
301 Grant Street
One Oxford Centre, 20th Floor
Pittsburgh, PA 15219

Attorneys for Appellees

———

OPINION OF THE COURT

———

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before the court on an appeal by Mary Geruschat, Dolores Speney, Antoinette Morocco, and Donna M. Buxton ("appellants") from the district court's memorandum order dated July 14, 2006, which adopted as its own and affirmed the bankruptcy court's opinion and order dated September 2, 2005, in which the bankruptcy court (1) asserted its jurisdiction to resolve a state-law malpractice, negligence, and fraud suit that appellants, creditors in a consolidated Chapter 11 bankruptcy proceeding, brought in a state court against the accountants who performed work during the bankruptcy, Ernst & Young LLP and its employee, Charles Modispacher (together "Ernst & Young"), (2) refused to remand appellants' case to the state court from which Ernst & Young removed it, and (3) dismissed the complaint on its merits. This appeal, however, primarily is about jurisdiction, both our jurisdiction to review the bankruptcy and district courts' decisions not to abstain from exercising jurisdiction and not to remand the matter to the state court, and, depending on the extent, if any, that we have jurisdiction to review those courts' decisions, whether the district court properly found that the bankruptcy court had subject matter jurisdiction and the

2

final adjudicative authority to resolve the state-law actions.

As we will discuss in detail later, appellants initially filed their suit in a state court, but Ernst & Young removed the case to a federal court, i.e., a bankruptcy court. Appellants then sought an order remanding the case to the state court on the grounds that (a) there were procedural irregularities in the removal process, (b) the bankruptcy court did not have subject matter jurisdiction over the dispute, and (c) even if the bankruptcy court did have jurisdiction, it should have abstained permissively or was required to abstain mandatorily from exercising its jurisdiction. The bankruptcy court disagreed with appellants, exercised jurisdiction, and dismissed the case on its merits. On appellants' appeal, the district court affirmed the bankruptcy court's order and, though to a degree writing separately, adopted the bankruptcy court's opinion and order as its own.

This appeal followed. But appellants challenge only the decisions regarding the procedural irregularities in the removal process, the bankruptcy court's finding that it had jurisdiction and final adjudicative authority, and its decision not to abstain from exercising that jurisdiction. Thus, we are not reviewing the disposition of the malpractice, negligence, and fraud dispute on the merits. Inasmuch as we conclude that we lack jurisdiction to review a substantial portion of the issues appellants raise on this appeal, and that the bankruptcy and district courts did not err in the rulings over which we have appellate jurisdiction, we will affirm the July 14, 2006 memorandum order of the district court and, accordingly, in effect, will affirm the bankruptcy court's opinion and order dated September 2, 2005.

II. FACTS AND PROCEDURAL HISTORY

The case has grown out of the activities of Earned Capital Corporation, Managed Properties, Inc., Canterbury Village, Inc., and Eastern Arabian, Inc. (collectively "Debtors"), corporations engaged in developing real property. To raise capital, the Debtors sold investment shares in the property, and, in return, promised the investors an annual return.

The Debtors' plan involved the development of 600 acres in

the Borough of Seven Fields, Butler County, Pennsylvania, with townhouses and recreational facilities. Unfortunately for the Debtors, however, their plan did not go as expected. Thus, they became delinquent in making the payments they promised to the investors, leading the Debtors to oversell shares to maintain the promised payments. The Debtors could not continue this Ponzi-type scheme indefinitely, and, consequently, on June 3, 1986, they filed separate voluntary petitions under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Western District of Pennsylvania. That court consolidated the Chapter 11 proceedings on June 5, 1986, in a case entitled In re Earned Capital Corporation, No. 86-21474.

Prior to the time that the Debtors filed their bankruptcy petitions, they had employed the accounting firm of Arthur Young & Company (a predecessor of Ernst & Young) to review their financial records and prepare the financial schedules needed for the bankruptcy. On June 12, 1986, the bankruptcy court approved the appointment of Ernst & Young.[1] Ernst & Young determined that the Debtors were insolvent and that they owed the vast majority of their obligations (totaling over $60,000,000) to the approximately 2,500 investors. An Official Committee of Unsecured Creditors ("Committee"), selected from among the investors, represented the investors in the bankruptcy case. The Committee and the Debtors filed competing plans of reorganization, both calling for consolidation of the Debtors' assets and liabilities into one surviving reorganized corporation.

The bankruptcy court found the Debtors to be insolvent and confirmed an Amended Plan of Reorganization ("Amended Plan") on October 21, 1987. According to appellants, the court based this disposition on information that Ernst & Young provided the court and the Debtors' creditors. Under the Amended Plan, the Debtors were merged into a successor entity, Seven Fields Development Corporation ("Seven Fields"), and their assets, the principal one of which was the Butler County real estate, became assets of Seven Fields. Under the Amended Plan, all of the secured and trade creditors' claims were to be paid in full or in accordance with agreements otherwise negotiated, but the investor class of unsecured creditors was to receive common stock in Seven Fields at a par value equal to 5% of their allowed claims with the remaining 95% classified as unsecured, nondischargeable debt. Under the Amended Plan, "[a]ll

---

[1]As a matter of convenience we will use the name Ernst & Young when referring to Arthur Young & Company.

4

activities of [Seven Fields] shall seek to achieve the goal of full payment to [the investors/stockholders]," app. at 33, and assets were to "be managed, improved, developed and sold, etc. where appropriate, to the end that all creditors will eventually achieve maximum returns," id. at 22. The investors voted overwhelmingly in favor of the plan, 2,179 to 87, on an individual basis, and, in claims terms, $62,639,067 to $13,758,972. After confirmation, Seven Fields liquidated its assets, substantially through the sale of the Butler County real estate, and made distributions to the investors. Seven Fields, however, did not pay the allowed claims of the investors in full through this liquidation.

On September 29, 2004, appellants, on behalf of themselves and others similarly situated as shareholders of Seven Fields, filed a complaint against Ernst & Young in the Court of Common Pleas of Butler County, alleging professional negligence (Count I), fraud and deceit (Count II), and negligent misrepresentation (Count III). Because, as will be seen, the precise allegations in the complaint are significant in determining a central issue on appeal, i.e., the jurisdiction of the bankruptcy court over appellants' state-law causes of action, we recite the relevant allegations verbatim:

> 2. Prior to the formation of Seven Fields . . . , the predecessor entities were involved in a bankruptcy in which [Ernst & Young] acted as accountants and performed services on behalf of, inter alia, the [appellants] and other members of the class – during and after the bankruptcy.

> 3. As a result of the work performed by [Ernst & Young], all of the predecessor entities were represented by [Ernst & Young] to be insolvent, the predecessor entities were consolidated and a successor corporation, Seven Fields . . . , acceded to ownership of the assets of the predecessor entities which included a substantial tract of land in Butler County, Pennsylvania.

> 4. In addition to declaring the predecessor entities insolvent, [Ernst & Young] advised the United States Bankruptcy Court, the [appellant] class and others, that even after the reorganization and bankruptcy and in spite of the fact that Seven Fields . .

5

. owned a substantial tract of land in Butler County, Pennsylvania, [Ernst & Young] represented to the [appellant] class members and others that the new company had a debt of about $280 million to the group of investors.

5. The foregoing had been represented previously and throughout the bankruptcy by [Ernst & Young] to the United States Bankruptcy Court, the investor class and others.

6. [Appellants] and the remaining class members had all invested varying sums of money in one or more of the predecessor entities including Earned Capital, Inc. and upon being advised by [Ernst & Young] that the company was $280 million in debt, [appellants] and the remaining class members were horrified in that [Ernst & Young], in effect, represented that [appellants] and the remaining class members had either lost all of their money or were going to lose a substantial portion of the money.

7. As a result of the advice received by[2] [Ernst & Young], an effort to develop the property and other assets was made which included sales of assets at prices below their market value and a general development scheme was put together by the successor corporation and its officers, which instead of emphasizing the highest use of the properties to which the new corporation had title, was instead calculated to generate cash as quickly as possible in an effort to both 'repay' [appellants] and other class members 'their loss' and in a further effort to reassure [appellants] and other class members that some money would be returned.

8. As a result of the state of mind and perception on the part of the new corporation, [appellants] and other class members, the property was developed and/or sold in a manner which caused all of

---

[2]The complaint uses the words "received by" but we believe that appellants intended to mean "given by" or "received from."

6

the investors to suffer losses on the investment
previously made and to fail to realize even a return of
the full amount of their investment.

App. at 43-44.

On November 5, 2004, Ernst & Young filed a notice of removal of the Butler County case with the clerk of the bankruptcy court, removing the case to the United States Bankruptcy Court for the Western District of Pennsylvania under Rule 9027(a) of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. §§ 1452 and 1334. Then, Ernst & Young filed a motion to dismiss appellants' complaint on November 11, 2004, arguing that even though their claims "are in the nature of a shareholder derivative suit," appellants failed to assert the claims on behalf of Seven Fields and had not made any demand on Seven Fields as required under Federal Rule of Civil Procedure 23.1. App. at 56-57. Additionally, Ernst & Young argued that the doctrines of res judicata, collateral estoppel, and judicial estoppel required dismissal of the complaint because the claims "necessarily require [the court] to disturb a valid, final and binding reorganization plan and confirmation order, as well as [the court's] order approving [its] fees." Id. at 57.[3]

Appellants responded with a motion requesting that the bankruptcy court remand the case to the Butler County Court of Common Pleas pursuant to 28 U.S.C. § 1452(b) and Federal Rule of Bankruptcy 9027(d), or, in the alternative, abstain from exercising jurisdiction under 28 U.S.C. §§ 1334(c)(1) and (c)(2). In this motion, appellants argued that the notice of removal was procedurally deficient in that Ernst & Young erroneously filed it with the clerk of the bankruptcy court and not the clerk of the district court, and that the bankruptcy court did not have subject matter jurisdiction. Appellants, in the alternative, also asserted that if the bankruptcy court did have jurisdiction, it should have abstained permissively or was required to abstain mandatorily from exercising its jurisdiction over the state-law causes of action. Moreover, appellants filed a "Motion to Strike Defendants' Notice of Removal," arguing that Ernst & Young was not permitted to remove the state-court case as the underlying bankruptcy case on which removal was predicated had been marked "closed" and Ernst & Young did not move to reopen the case before filing the notice of removal.

---

[3] Ernst & Young raised other defenses that we need not describe.

On September 2, 2005, the bankruptcy court issued an opinion and order in which it sua sponte reopened the underlying bankruptcy case and denied appellants' motions to remand and strike the notice of removal, thus asserting its subject matter jurisdiction to rule on the merits of the case. In re Earned Capital Corp., 331 B.R. 208 (Bankr. W.D. Pa. 2005). On the merits, the bankruptcy court granted Ernst & Young's motion to dismiss for failure to state a claim because "[appellants'] claims are shareholder derivative claims that can only be presented by [appellants] through a shareholder derivative suit," and appellants failed to make a demand on "the board of directors or comparable authority" under Federal Rule of Civil Procedure 23.1 for them to bring the action against Ernst & Young. Id. at 222-24. The court also found that it should dismiss the complaint on the grounds of res judicata, collateral estoppel, and judicial estoppel inasmuch as the bankruptcy court already had declared the Debtors insolvent in the confirmation proceedings and had awarded fees to Ernst & Young–litigation in which the Committee, which represented the interests of the investors, fully participated. Id. at 224-28. Appellants appealed from the opinion and order of the bankruptcy court to the district court under 28 U.S.C. § 158(a), which, in turn, on July 14, 2006, affirmed the order of the bankruptcy court and adopted the bankruptcy court's opinion and order as its own. Geruschat v. Ernst & Young LLP, 346 B.R. 123 (W.D. Pa. 2006).

On August 7, 2006, appellants timely filed a notice of appeal, contesting the district court's affirmance of the bankruptcy court's order (1) granting Ernst & Young's motion to dismiss their case, (2) denying appellants' motion to strike Ernst & Young's notice of removal, (3) denying appellants' motion to remand the case to the state court, and (4) reopening the underlying bankruptcy case. However, when we examined appellants' brief, we observed that it was devoid of any discussion relating to the merits of the case insofar as the district court affirmed the bankruptcy court's opinion and order granting Ernst & Young's motion to dismiss. It thus appeared that between the time appellants filed their notice of appeal and the time that they filed their brief, they decided not to appeal the bankruptcy and district courts' disposition of the case on the merits and, instead, challenged only the resolution of jurisdictional issues in the bankruptcy proceedings. At oral argument, appellants confirmed that they had made a deliberate decision to forego their appeal insofar as it relates to the merits of the dispute. Accordingly, the only issues appellants raise before us relate to removal procedure, subject matter jurisdiction, the bankruptcy court's adjudicative authority over the

8

state-law claims, and absention.  In particular, appellants present the issues before us as follows:

1. Does a bankruptcy court have subject matter jurisdiction to adjudicate a case removed from state court where the underlying bankruptcy case on which removal is predicated was closed many years before removal and where the removing party did not seek to open the earlier bankruptcy case for cause pursuant to 11 U.S.C. § 350(b) prior to removal of the state court case?

2. May a party within this Circuit remove a case directly to the bankruptcy court under 28 U.S.C. § 1452(a) without a prior referral from the district court?

3. Did the requisite 'close nexus' exist under Resorts Int'l, Inc. Litig. Trust v. Price Waterhouse [, 372 F.3d 154 (3d Cir. 2004),] to confer subject matter jurisdiction in the district court over [appellants'] state law claims where such claims affected neither the bankruptcy estate nor the debtor, and where success on the merits of such claims would have no impact on the property of the estate or distribution to any creditor?

4. Did [appellants'] state law malpractice action constitute a 'non-core' proceeding under 28 U.S.C. § 157 thus depriving the bankruptcy court of original jurisdiction to enter final orders and further requiring the district court to abstain from jurisdiction under 28 U.S.C. § 1334(c)(2)?

5. Did the bankruptcy court commit clear error of law when it assumed that the status of [appellants'] complaint as a 'core proceeding' was dispositive of the issue of discretionary abstention under § 1334(c)(1)?

9

Appellants' br. at 2. We have divided those issues into three categories: (1) removal procedure errors (issues 1 and 2); (2) jurisdiction (issues 3 and 4); and (3) abstention (issues 4 and 5).


### III. JURISDICTION AND STANDARD OF REVIEW

Appellants' central issue in this case implicates the question of whether the bankruptcy court had jurisdiction under 28 U.S.C. §§ 157 and 1334. There is no question that the district court had jurisdiction over the appeal of the bankruptcy court's September 2, 2005 opinion and order under 28 U.S.C. § 158(a).

But before we reach the question of whether the bankruptcy court had jurisdiction and the other issues appellants raise, we first must ensure that we have jurisdiction to review this case under 28 U.S.C. §§ 1291 and 158(d). See Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192, 193-94 (3d Cir. 2007) ("As always, after we are satisfied of our own jurisdiction, the threshold, and, indeed, as it turns out, the only issue on this appeal is whether the district court had subject matter jurisdiction.") (footnote omitted). The parties initially did not question our jurisdiction.[4] Prior to argument, however, we observed that there might be a problem with respect to our jurisdiction. Thus, at our direction, our clerk sent a notice to the parties requesting that they "be prepared to briefly discuss whether 28 U.S.C. § 1334(d) precludes us from reviewing both the Bankruptcy Court's decision to abstain under § 1334(c)(1) and the District Court's affirmance of this decision, because discretionary abstention does not appear to be subject to appeal

---

[4]In appellants' opening brief they limit their discussion of our jurisdiction to the following sentence: "The United States Court of Appeals for the Third Circuit currently has jurisdiction over this matter pursuant to 28 U.S.C. § 1291 as an appeal from a final decision and order of the district court." Appellants' br. at 1. In Ernst & Young's brief it does not mention our jurisdiction, thus implying that it initially agreed with appellants on this point. Nevertheless, we have a "special obligation to satisfy [ourselves] of [our] own jurisdiction" even if the parties agree that we have jurisdiction. Korytnyuk v. Ashcroft, 396 F.3d 272, 279-80 (3d Cir. 2005). As will be seen, an inquiry into our jurisdiction is more complicated than the parties apparently originally believed.

pursuant to § 1334(d)."[5]  At oral argument, we expressed an additional concern with respect to our jurisdiction to review certain aspects of the case under 28 U.S.C. § 1452(b), the bankruptcy removal statute, which bars a court of appeals' review of decisions to remand or not to remand made on the basis of "any equitable ground." Accordingly, we asked the parties to submit supplemental memoranda addressing jurisdictional issues.  Having given the parties an opportunity to address the questions relating to our jurisdiction, and having received those memoranda and heard their oral arguments, the issues with respect to our jurisdiction are now ripe for our disposition.

The essence of this appeal is that the bankruptcy or district court should have remanded the case to the state court because (1) Ernst & Young's notice of removal was procedurally defective, (2) the federal courts lacked subject matter jurisdiction over the state-law causes of action, (3) the bankruptcy court lacked final adjudicative authority, and (4) the federal courts should have abstained permissively or were required to abstain mandatorily from asserting their jurisdiction.[6]  There are three statutory provisions potentially affecting our jurisdiction to review the orders in which the bankruptcy and district courts declined to remand the case, assumed jurisdiction, and did not abstain from asserting jurisdiction: 28 U.S.C. § 1447(d) (general removal/remand); 28 U.S.C. § 1452(b) (bankruptcy removal/remand); and 28 U.S.C. § 1334(c) and (d) (bankruptcy abstention and limitation of appeals of orders with respect to abstention).

Section 1447(d) is the general statutory provision governing the reviewability of orders remanding cases removed from state courts.  Section 1447(d) states "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise [except in certain civil rights cases]."  Though the Supreme Court has concluded that section 1447(d) applies regardless of whether a party has removed a case pursuant to the general removal

---

[5]Unfortunately our letter was exactly wrong because the bankruptcy court did not abstain.  As it happens we are confident that the attorneys realized that we had erred and were not misled.

[6]It is possible that we could grant relief to appellants without ordering that the bankruptcy and district courts remand the case to the state court but inasmuch as we do not find that they erred in any respect we need not set forth what that possible relief might be.

provision, 28 U.S.C. § 1441(a), or the bankruptcy removal provision, 28 U.S.C. § 1452, see Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 128, 116 S.Ct. 494, 497 (1995), section 1447(d) is inapplicable here as in this case we are not dealing with an order remanding the case. After all, the bankruptcy court denied appellants' motions seeking to remand the case and the district court affirmed the denial. See City & County of San Francisco v. PG&E Corp., 433 F.3d 1115, 1122 (9th Cir.) (holding that section 1447(d) does not apply to decisions not to remand a case), cert. denied, 127 S.Ct. 208 (2006); In re Bissonnet Invs. LLC, 320 F.3d 520, 525 (5th Cir. 2003) (same). Indeed, we regularly entertain appeals following final judgments in which appellants contend that the district court erred in denying a motion to remand.

In contrast, under the removal statute applicable specifically to bankruptcy cases,

> [t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452(b) (emphasis added). Thus, section 1452(b), in addition to barring review of decisions to remand, precludes appellate review of decisions "to not remand," the type of order involved in this case.

But section 1452(b) makes clear that a decision to remand or not to remand a case is unreviewable by a court of appeals only when the district court relies on "any equitable ground" as the basis for its decision. While the statute does not define "equitable ground," we have recognized that "equitable" as used in section 1452(b) is not to be understood as distinguishing equitable from legal grounds in a traditional sense, but, instead, "equitable" "signals that which is reasonable, fair, or appropriate." Allied Signal Recovery Trust v. Allied Signal, Inc., 298 F.3d 263, 268 (3d Cir. 2002) (quoting Things Remembered, 516 U.S. at 133, 116 S.Ct. at 499 (Ginsburg, J., concurring)).

12

Accordingly, we first must decide which, if any, of the categories of issues appellants raise contesting the bankruptcy and district courts' decisions not to remand the state-law causes of action are insulated from appellate review by section 1452(b). Additionally, we also must determine whether 28 U.S.C. § 1334, the bankruptcy abstention provision, insulates from our review the decisions relating to abstention.

### A.       Removal Procedure Errors

We have no doubt that the bankruptcy court's "decision to not remand" the case in the face of appellants' procedural arguments that Ernst & Young did not seek to reopen the bankruptcy case before filing its notice of removal and that Ernst & Young improperly filed the notice of removal directly with the bankruptcy clerk was based on the bankruptcy court's determination that there were not "equitable ground[s]," i.e., "reasonable, fair, or appropriate" grounds, for the remand, a decision that we cannot review. The Supreme Court in Things Remembered faced very similar circumstances. In that case, the issue was "whether a federal court of appeals may review a district court order remanding a bankruptcy court case to state court on grounds of untimely removal." Things Remembered, 516 U.S. at 125, 116 S.Ct. at 496. The Court decided that the general statutory provision governing the reviewability of remand orders, 28 U.S.C. § 1447(d), barred appellate review of the remand order.[7] See Things Remembered, 516 U.S. at 127-28, 116 S.Ct. at 496-97. While the majority opinion did not discuss the possibility that the bankruptcy remand provision of section 1452(b) similarly would bar review, Justice Ginsburg in her concurring opinion, joined by Justice Stevens, concluded that section 1452(b) independently would bar review of the order remanding the case by reason of untimely removal, finding that the basis for remand was on an "equitable ground." Id. at 131-34, 116 S.Ct. at 498-500 (Ginsburg, J., concurring).

Surely, if a remand based on untimely removal is predicated on an "equitable ground," the decision not to remand based on the procedural defects raised here also addresses a proposed remand on equitable grounds, and thus we are precluded from reviewing it. We recognize that the issue in Things Remembered was whether a decision to remand was unreviewable and the issue here is whether a

---

[7]As we discussed above, section 1447(d) is inapplicable here as it only bars review of orders to remand, not orders not to remand.

decision not to remand is unreviewable, and, although we can distinguish the cases on that basis, this difference is not material here as bankruptcy remand section 1452(b) tells us that appellate courts should treat decisions to remand or not remand alike in ascertaining their own jurisdiction.

Appellants do not specifically discuss in their supplemental memorandum whether we are barred from reviewing the issue raised relating to Ernst & Young's filing of the notice of removal with the bankruptcy clerk and not the district court clerk. Nevertheless, we are treating appellants' discussion relating to our obligation to review their challenges to the bankruptcy court's subject matter jurisdiction as incorporating this aspect of their appeal. However, we do not categorize this filing issue as relating to the bankruptcy court's subject matter jurisdiction, a holding that would be very significant with respect to our jurisdiction for, as we next discuss, section 1452(b) does not preclude a court of appeals from reviewing a challenge to a bankruptcy or district court's subject matter jurisdiction. Rather, Ernst & Young's error, if there was an error, was merely an error relating to removal procedure in the nature of a "claim-processing" issue as the Supreme Court used that term in Bowles v. Russell, 127 S.Ct. 2360, 2364 (2007). It had nothing to do with the "delineat[ion of] the classes of cases (subject matter jurisdiction) . . . falling within a court's adjudicatory authority." Kontrick v. Ryan, 540 U.S. 443, 455, 124 S.Ct. 906, 915 (2004). Thus, section 1452(b) precludes us from reviewing the alleged procedural error here.[8]

_____

[8]In any event, even if we had jurisdiction to consider the question of whether Ernst & Young filed the notice of removal with the appropriate clerk, appellants' argument would fail. Federal Rule of Bankruptcy Procedure 9027(a)(1) permits the filing of a notice of removal with the "clerk," a term that Rule 9001(3) defines as "bankruptcy clerk," and 28 U.S.C. § 1452(a) permits removal to the "district court," an entity of which the bankruptcy court is a unit. 28 U.S.C. § 151; see In re Gianakas, 56 B.R. 747, 750 (N.D. Ill. 1985). We also point out that the Western District of Pennsylvania has a general order referring all bankruptcy cases and proceedings filed in the district to the bankruptcy judges. See Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc (Oct. 16, 1984), available at http://www.pawb.uscourts.gov/pdfs/ OrderOfReference.pdf. Moreover, even if we concluded that the notice of removal should have been filed with the district court and that the filing error compels us to reverse, our ruling would be meaningless. In this regard we take note of 28 U.S.C.

14

Appellants argue that section 1452(b) does not bar our review of issues attributable to Ernst & Young's failure to seek to reopen the bankruptcy case before filing its notice of removal, as they raised the issue with the bankruptcy judge "in a motion to strike defendant's notice of removal, and not by means of a motion to remand." Appellants' Suppl. Mem. at 2. We do not find this argument to be substantial. Inasmuch as section 1452 precludes our review of "decision[s] to not remand," we look to the substance of the bankruptcy court's decision and not the form of the party's motion in determining the applicability of section 1452.[9] It is clear that the

_____

§ 1631 which provides that when a civil action is filed with a district court (of which the bankruptcy court is a unit) with a want of jurisdiction the court shall in the interest of justice transfer the case to a court in which it could have been filed originally. Thus, if the bankruptcy clerk thought that the removal should have been to the district court, he almost certainly would have sent the removal notice to that court which then would have referred it back to the bankruptcy court pursuant to the general referral order. Accordingly, if we reversed on the filing point, vacated the bankruptcy and district courts' orders, and remanded the matter to the bankruptcy court to enter an order not inconsistent with our opinion, we do not doubt that rather than dismissing the case, the bankruptcy court would transfer it to the district court which then would refer it back to the bankruptcy court following which all the vacated orders of the bankruptcy court, and, if appellants again appealed, the district court's memorandum order of July 14, 2006, would be reinstated.

[9]It is obvious why we look to the substance of the court's order and not the party's captioning of its motion in determining the applicability of section 1452. If we were to look at the form of the party's motion, we would encourage attempts to circumvent the broad bar precluding our review of remand orders under section 1452. This case provides a great example. Appellants caption their motion as a "Motion to Strike Defendants' Notice of Removal." However, ordinarily when a party files a motion to strike under the Federal Rules of Civil Procedure it files the motion under Federal Rule of Civil Procedure 12(f), which permits a party to seek to have "stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." But appellants did not file their motion to strike for any such purpose. In the circumstances the appropriate motion here would have been a "motion to remand" under 28 U.S.C. § 1447(c), which provides for "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction," or a motion under

bankruptcy court's decision in which it denied "Plaintiffs' Motion to Strike Defendants' Notice of Removal," and the district court's affirmance thereof, are "decision[s] to not remand" inasmuch as they deny appellants' request to remand the matter to the state court because of the alleged procedural defect. We add that appellants themselves acknowledge this point for they requested in their proposed order attached to their motion that the court order recite that "Defendants' Notice of Removal is hereby stricken, and this case is remanded to the Court of Common Pleas of Butler County, Pennsylvania." App. at 145.[10]

### B. Bankruptcy Court Jurisdiction and Adjudicative Authority

We agree with appellants that the decisions of the bankruptcy and district courts not to remand the case on the basis that the bankruptcy court lacked jurisdiction and their argument that the bankruptcy court did not have the authority to exercise final adjudicative authority, while "not per se reviewable" under section 1452(b), nevertheless are subject to appellate review. See Things Remembered, 516 U.S. at 132 n.1, 116 S.Ct. at 499 n.1 (Ginsburg, J., concurring); see also City & County of San Francisco, 433 F.3d at 1121 ("This is a question of subject matter jurisdiction that does not implicate the jurisdictional limitations of section 1452(b)."); In re V&M Mgmt., Inc., 321 F.3d 6, 7 (1st Cir. 2003) ("Because

---

28 U.S.C. § 1452, which provides for remand of removed claims relating to bankruptcy cases on "any equitable ground." We also point out that we are not aware of any rule or other authority authorizing a motion to strike a notice of removal, though we are aware that parties sometimes characterize motions seeking certain relief other than those under Rule 12(f) as motions to strike.

[10]Although we do not have jurisdiction to review this issue, we point out that it was within the bankruptcy judge's discretion to reopen the bankruptcy case sua sponte so that "matters that have a significant connection with the administration of the case can be addressed." Earned Capital, 331 B.R. at 217; see 11 U.S.C. § 350 (providing for the reopening of a bankruptcy case "for other cause"); 11 U.S.C. § 105(a) (permitting court to act sua sponte); Donaldson v. Bernstein, 104 F.3d 547, 551-52 (3d Cir. 1997) (rejecting contention that the bankruptcy court lacked jurisdiction on the ground that it was acting in a closed case when the court sua sponte reopened the case "for other cause").

16

[appellant's] argument attacks the lower court's subject matter jurisdiction, we not only have jurisdiction to review but are obligated to do so."); Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.), 124 F.3d 619, 625 (4th Cir. 1997) ("[W]e hold that § 1452(b) . . . does not preclude us from reviewing the district court's decision denying [the] motion to remand to the extent that [the] motion rested on the district court allegedly lacking subject matter jurisdiction."). We reach our conclusion because courts of appeals on appeals from bankruptcy and district courts must ensure that those courts do not exceed the authority that Article III of the Constitution and Congress has granted them. Section 1452 cannot detract from this obligation and we are of the view that a bankruptcy judge absent consent of the parties does not have jurisdiction to enter a final order in a non-core matter. 28 U.S.C. § 157(c). Of course, there is no question that the district court had jurisdiction to entertain the appeal from the bankruptcy court. See 28 U.S.C. § 158(a).

## C. Abstention

The question of whether we have jurisdiction to review the district court's affirmance of the bankruptcy court's decision not to abstain under 28 U.S.C. § 1334(c)(2) (mandatory abstention) and section 1334(c)(1) (permissive abstention) is a two-step process. First, we must decide which version of section 1334 we are to apply in this case. This selection is significant as Congress adopted amendments to section 1334 altering courts of appeals' jurisdiction in 1984 ("the 1984 Amendments"), 1990 ("the 1990 Amendments"), and 1994 ("the 1994 Amendments"). Congress enacted the current version of section 1334 in the 1994 Amendments, though it further amended section 1334 in technical non-substantive respects in 2005.[11] Second, once we decide which version of section 1334 applies, we must construe the statute to determine the extent of and limitations on a court of appeals' jurisdiction over abstention decisions.

Under the current version of section 1334(d),

_____

[11]The 2005 Amendments in Pub. L. 109-8, § 1219, struck out "made under this subsection" and inserted "made under subsection (c)" and substituted "Subsection (c) and this subsection" for "This subsection" in the last sentence of section 1334(d) dealing with stays. But we are satisfied that the 2005 Amendments did not make substantive changes in section 1334 material here.

17

[a]ny decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2) [mandatory abstention]) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title . . . . Subsection (c) and this subsection shall not be construed to limit the applicability of the stay . . . .

Thus, we have recognized that, as section 1334(d) now stands, "appeals of decisions not to exercise mandatory abstention pursuant to § 1334(c)(2) are explicitly permitted," Stoe v. Flaherty, 436 F.3d 209, 212 (3d Cir. 2006), yet appeals of decisions involving permissive abstention, whether or not the court abstains, are barred, see Allied Signal, 298 F.3d at 269. Moreover, under section 1334(d) a decision mandatorily abstaining is not appealable.

Inasmuch as appellants appeal the denial of their motion for mandatory abstention, it might be thought that they would contend that the current version of section 1334 is applicable here. Yet they contend that section 1334(d) in its current form does not control this case, a position they predicate on the circumstance that the Debtors filed their bankruptcy petitions in 1986, well before Congress enacted the current version of section 1334 through the 1994 Amendments and even well before Congress enacted the 1990 Amendments. Appellants' Suppl. Mem. at 3-4. Actually it is understandable that they take this position as they argue that the bankruptcy court should have abstained both mandatorily and permissively, and currently, as we have indicated, appeals of orders denying permissive abstention unquestionably are not allowed.

The appellants rely on the 1984 Amendments, i.e., the version the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333, enacted on July 10, 1984, because that version provided that "[a]ny decision to abstain made under this subsection is not reviewable by appeal or otherwise." See Christo v. Padgett, 223 F.3d 1324, 1331 (11th Cir. 2000). But the 1984 Amendments did not limit appeals of decisions not to abstain. Accordingly, if we were to look to the 1984 Amendments for our rule of decision, the bankruptcy court's decision not to abstain mandatorily or permissively would be subject to our review and we could review all of appellants' abstention arguments.

Ernst & Young, on the other hand, urges us to look to the version of section 1334(c)(2) enacted in the Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089, 5113, i.e., the 1990 Amendments, which provided that "[a]ny decision to abstain or not to abstain under this subsection is not reviewable by appeal or otherwise by the court of appeals . . . ." Appellees' Suppl. Mem. at 3-4. Ernst & Young contends that under the 1990 Amendments we are prohibited from reviewing decisions not to abstain either mandatorily or permissively. Id. at 4-5. Thus, appellants and Ernst & Young take polar opposite approaches with respect to our jurisdiction to hear the appeal with respect to abstention.

We have examined the question of which version of section 1334 is applicable, and have concluded that section 1334(d), as amended in 1994, and which, with the minor non-substantive 2005 Amendments, i.e., the current law, controls this case even though neither party contends that the 1994 Amendments are applicable. We reach this conclusion because Congress enacted the 1994 Amendments long before appellants initiated their action in the state court.[12]

In considering whether the 1994 Amendments, and thus current law, are applicable we point out that Congress made it clear that the 1994 Amendments, with certain exceptions not relevant here, "shall not apply with respect to cases commenced under title 11 of the United States Code before the date of the enactment of this Act [October 22, 1994]." Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 702(b) (Application of Amendments), 108 Stat. 4106, 4150; see also 28 U.S.C. § 1334 (Historical and Statutory Notes, Effective and Applicability Provisions) (stating that the 1994 Amendments do "not apply with respect to cases commenced under Title 11 of the United States Code before Oct. 22, 1994"); In re Middlesex Power Equip. & Marine, Inc., 292 F.3d 61, 67 n.5 (1st Cir. 2000); Christo, 223 F.3d at 1332. While there has been some

---

[12]Ernst & Young does contend that "alternatively" to the 1990 Amendments being applicable "the 1994 Amendments apply" to appellants' case, Appellees' Suppl. Memo at 9, and that under "both the 1990 and 1994 amended versions of 28 U.S.C. § 1334, [we are] without jurisdiction to review [the bankruptcy judge's] decision not to remand and not to abstain." Id. at 10. We understand, however, that Ernst & Young primarily relies on the version of section 1334 as amended by the 1990 Amendments.

discussion in other courts of appeals as to whether a "case[] commenced under title 11" refers to the bankruptcy case or the civil case which was removed, see id., a distinction that is critical here as the Debtors filed their petitions in 1986 and appellants instituted this action in 2004, we need not concern ourselves at length with this question regarding application of the 1994 Amendments for we already have determined that "cases under Title 11" as used in section 1334(a) refers "merely to the bankruptcy petition itself," as opposed to "proceeding[s]," which refers "to the steps within the 'case' and to any subaction within the case that may raise a disputed or litigated matter." In re Combustion Eng'g, Inc., 391 F.3d 190, 226 n.38 (3d Cir. 2004). We do not see why "cases" should have a different meaning in the words "cases commenced under title 11" in Pub. L. No. 103-394 § 702(b), with respect to the effective date of the 1994 Amendments. Thus, as the 1994 Amendments do not apply to cases, i.e., the bankruptcy case itself, commenced under title 11 before October 22, 1994, they do apply in this proceeding which was instituted after October 22, 1994, and, rather than being a case within the meaning of Pub. L. No. 103-394, § 702(b), is a "subaction" within the bankruptcy case initiated long after that date.

It might be thought from the foregoing analysis that we would conclude that we do not have jurisdiction over this appeal with respect to the bankruptcy court's refusal to abstain permissively but do have jurisdiction over its refusal to abstain mandatorily as appeals of decisions not to abstain in proceedings commenced after October 22, 1994, are permitted when mandatory abstention has been refused. Indeed, at first glance it would seem that nothing could be clearer as section 1334(d) provides that only "a decision not to abstain in a proceeding described in subsection (c)(2)" i.e., mandatory abstention, is reviewable.

Yet there is a special situation here. As we point out below in dealing with the distinction between "related to," i.e., non-core jurisdiction, and "arising under title 11 or arising in a case under title 11," i.e., core jurisdiction, in determining whether the bankruptcy court had final adjudicative power, in this case the bankruptcy court was applying "arising in" jurisdiction. Moreover, section 1334(c)(2) in providing for mandatory abstention applies only to "a proceeding based upon a State law cause of action related to a case under title 11 but not arising under title 11 or arising in a case under title 11." Consequently, it necessarily follows from our holding that this is an "arising in" case, that there was no possible basis for the bankruptcy

20

and district courts to abstain mandatorily under the 1994 Amendments or at any time since their enactment. See In re Gober, 100 F.3d 1195, 1206 (5th Cir. 1996) ("Mandatory abstention applies only to non-core proceedings -- that is, proceedings 'related to a case under title 11, but not arising under title 11, or arising in a case under title 11.'"). Thus, we are not dealing with a decision denying mandatory abstention as no matter how appellants entitled their application for abstention they did not make a motion for abstention coming within section 1334(c)(2).[13] Consequently, notwithstanding appellants' efforts to characterize this case as involving mandatory abstention, it is only a permissive abstention case and we do not have jurisdiction over the appeal of the denial of abstention.

We realize that our result differs from that of the Court of Appeals for the Fifth Circuit In re Southmark Corp., 163 F.3d 925 (5th Cir. 1999), a case on which appellants rely. In that case, the court apparently believed that it should look to the filing date of the bankruptcy petition when determining which version of section 1334 applied. See id. at 929. Thus, the court applied the 1984 Amendments in a case in which the Chapter 11 bankruptcy petition was filed in 1989, even though the civil action before the court of appeals was filed in a state court and removed to a federal court in 1995, after the enactment of both the 1990 Amendments and the 1994 Amendments and prior to the matter being before the court of appeals in 1999. Id. at 927-29. The court did not discuss the implications of the 1990 Amendments but seemed to think that inasmuch as "Southmark's case," evidently meaning its Chapter 11 filing, "predates [the 1994] Amendments and was filed when decisions not to abstain were reviewable on appeal," id. at 929, it had jurisdiction.

---

[13] Even though our opinion has the effect of rejecting appellants' mandatory abstention contentions on their merits, we are not assuming jurisdiction contrary to the holding in Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 93-102, 118 S.Ct. 1003, 1012-16 (1998), in determining that this is a core case. In this regard we point out that we have jurisdiction to decide whether this case is core or non-core as appellants challenge the bankruptcy court's exercise of final adjudicative power, and a resolution of that question requires that we determine if the case is core or non-core. The determination of that issue has an incidental effect on the jurisdictional question of whether we have authority to hear appellants' arguments with respect to mandatory abstention and thus has the collateral effect of rejecting appellants' mandatory abstention claims on their merits.

The court's reference to the appealability of decisions not to abstain must have been to the 1984 Amendments as they precluded only appeals of decisions to abstain.

We cannot distinguish Southmark with respect to jurisdiction over abstention appeals but we will not follow it as we question whether Southmark in this respect is consistent with binding precedents.[14] It is well-settled that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016 (1974). We find no justification to disregard this longstanding legal principle and establish an exception wherein a court would look to the date that a debtor or creditor filed the bankruptcy case rather than the proceeding directly in issue in determining which version of section 1334 applies. Proceedings subject to the abstention provisions are causes of action initiated separately from the bankruptcy case itself and often arise well after the filing of bankruptcy petition, and sometimes, as in this case, even after the assets of the bankruptcy estate have been distributed and the bankruptcy case closed. Overall, we cannot justify applying the law that existed at the time the Debtors filed their bankruptcy petitions and not the law that existed at the time that appellants filed their separate civil action or the law as it currently stands which is materially the same.

In sum, with respect to our jurisdiction we find that we only can review the bankruptcy and district courts' decisions relating to subject matter jurisdiction, including the authority of the bankruptcy court to issue final orders.[15] We do not have jurisdiction to review

---

[14]As we explain below we do follow Southmark in other respects.

[15]Although we reject Ernst & Young's contention that the 1990 Amendments control this case we are satisfied that its contention that those amendments would bar, if applicable, any appeal of an abstention decision abstaining or not abstaining on mandatory or permissive grounds is correct. Moreover, we are satisfied that those amendments were in effect until Congress enacted the 1994 Amendments and if Congress had not adopted the 1994 Amendments the 1990 Amendments would control this case. The principal argument with respect to the 1990 Amendments centers on the point that their restriction on appealability of abstention decisions was contained in section 1334(c)(2) dealing with

their decisions relating to the alleged procedural defects in the removal process and mandatory or permissive abstention. Consequently, inasmuch as appellants do not challenge the order dismissing their case on the merits, now that we have set forth the scope of our jurisdiction, the subject matter of our review is quite limited.

### D.    Standard of Review

"Our review of the District Court's ruling in its capacity as an appellate court is plenary, and we review the bankruptcy judge's legal determinations de novo," In re O'Lexa, 476 F.3d 177, 178 (3d Cir. 2007), and "its factual findings for clear error and its exercise of discretion for abuse thereof," In re United Healthcare Sys., Inc., 396 F.3d 247, 249 (3d Cir. 2005). Our review of the district court's order on jurisdiction and of the issue of whether the proceeding in the bankruptcy court was core or non-core is de novo. See Stoe, 436 F.3d at 212; In re Resorts Int'l, Inc., 372 F.3d 154, 160 (3d Cir. 2004).

## IV. DISCUSSION

### A.    The Statutory Framework of Federal Bankruptcy Jurisdiction

As we have indicated in other litigation, "[b]ankruptcy courts fall outside of the constitutional authority of Article III and derive their authority from federal statutes." Resorts, 372 F.3d at 161. Congress, in turn, "has vested limited authority in bankruptcy courts"

---

mandatory abstention rather than, as now, separately in section 1334(d) and thus the restriction might not apply to decisions with respect to permissive abstention. We believe, however, that Congress intended the restriction on appeals to apply to permissive abstention as authorized in section 1334(c)(1) both as a matter of what might be characterized as "mechanical" statutory construction and because we cannot understand why Congress would have wanted to preclude appeals of decisions denying mandatory abstention, as it undoubtedly did in the 1990 Amendments, but would have wanted to permit appeals of decisions denying permissive abstention. In fact, if anything, one would expect that Congress would have had the reverse intent, as it, in fact, did when it adopted the 1994 Amendments.

through 28 U.S.C. §§ 1334 and 157, sections within title 28 of the United States Code dealing with the judiciary and judicial procedure. Id.  For the most part, however, title 11 of the United States Code governs bankruptcy proceedings.

Section 1334 describes the jurisdictional boundaries of a district court over bankruptcy cases and proceedings but, by itself, does not vest any authority in the bankruptcy courts.  Rather, section 1334(a) states that "the district courts shall have original and exclusive jurisdiction of all cases under title 11," and section 1334(b) states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  District courts, however, even though they have jurisdiction under subsections (a) or (b), are permitted, "in the interest of justice, or in the interest of comity with State courts or respect for State law[,] . . . [to] abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  28 U.S.C. § 1334(c)(1) (permissive abstention). Additionally,

> [u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under [section 1334], the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (mandatory abstention).

28 U.S.C. § 157, on the other hand, lists the bankruptcy cases and proceedings that may be "referred" to the bankruptcy courts. Absent delegation of authority by the district court, much like the authority in 28 U.S.C. § 636(b), which provides for the delegation of certain judicial powers to magistrate judges, section 157 does not permit bankruptcy judges to hear and adjudicate cases in the absence of a reference from the district court.  But under section 157(a), "[e]ach district may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the

district." As we have indicated, "[t]he district courts' power to refer is discretionary, but courts routinely refer most bankruptcy cases to the bankruptcy court." Resorts, 372 F.3d at 162 (internal quotation marks omitted).

Section 157 provides for two levels of authority that may be invested in a bankruptcy judge depending upon into which of two categories a case or proceeding falls. The two categories are (1) "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," 28 U.S.C. § 157(b)(1) (collectively known as "core proceedings"),[16] and (2) "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," 28 U.S.C. § 157(c)(1) ("non-core proceedings"). See Combustion Eng'g, 391 F.3d at 225; Resorts, 372 F.3d at 162.

The bankruptcy judge "determine[s], on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). A correct determination of whether a matter is core or non-core establishes the bankruptcy judge's level of authority. With respect to core

_____

[16]Core proceedings as defined in section 157 include, but are not limited to-- (A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemption from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11; (C) counterclaims by the estate against persons filing claims against the estate; (D) orders in respect to obtaining credit; (E) orders to turn over property to the estate; (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul, or modify the automatic stay; (H) proceedings to determine, avoid, or recover fraudulent conveyances; (I) determinations as to the dischargeability of particular debts; (J) objections to discharges; (K) determinations of the validity, extent, or priority of liens; (L) confirmations of plans; (M) orders approving the use or lease of property; (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; (O) other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and (P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

proceedings Congress has provided that "bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders or judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). Sections 158(a) and (b) give jurisdiction to the district courts and the bankruptcy appellate panel (should one be established by the judicial council of a circuit and with the consent of all the parties) to hear appeals from final judgments, orders, and decrees, as well as from interlocutory orders and decrees under certain circumstances, entered by the bankruptcy courts.

However, the determination that a case is not a core proceeding does not mean that a bankruptcy judge lacks authority with respect to it. Rather,

> [a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1). Additionally, "the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(c)(2).

> B.      Resorts International

Appellants predicate a large part of their case on this appeal challenging the bankruptcy and district courts' jurisdiction on our opinion in Resorts, 372 F.3d 154, so we start with a discussion of that case. In Resorts, Resorts International and related entities entered into Chapter 11 bankruptcy proceedings in 1989. Id. at 157. The following year the bankruptcy court issued an order confirming their Second Amended Joint Plan of Reorganization ("the Reorganization Plan"). Id. at 158.

26

Less than one month after the court confirmed the Reorganization Plan, Resorts International and its creditors entered into a Final Plan and Litigation Trust Agreement creating a litigation trust in which the trustee was assigned claims Resorts International held against Donald J. Trump and affiliated entities arising from Trump's 1988 leveraged buyout of the Taj Mahal Resort. Id. The Final Plan authorized the trustee to prosecute the claims, with the debtor to provide the first $5,000,000 spent in the litigation in the form of an irrevocable letter of credit. Nevertheless the proceeds from the suit were to be distributed to certain creditors who were covered under the Final Plan. Id. at 157-58. The Final Plan also required the trustee to retain an independent public accounting firm to provide auditing and tax-related services for the trust, and on November 1, 1990, pursuant to this requirement, the trustee retained Price Waterhouse for this purpose. Id. at 158. On May 28, 1991, the trustee entered into a settlement, that the creditors subsequently approved, with Trump in the amount of $12,000,000. Id. The proceeds of the settlement became assets of the litigation trust. Id.

On April 15, 1997, the trustee filed an adversary proceeding in the bankruptcy court setting forth accounting malpractice and breach of contract claims against Price Waterhouse in which the trustee sought disgorgement of Price Waterhouse's fees in excess of $500,000 paid for accounting services that it performed for the trust, as well as damages. Id. The trustee's "principal allegation [was] that Price Waterhouse erroneously reported in its audit reports that certain accrued interest on the Litigation Trust accounts belonged to the debtor rather than the Trust," and that the bankruptcy court relied upon those erroneous reports in a separate suit between the trust and Resorts International in deciding on an allocation of the interest earned on the $5,000,000 litigation expense account created under the Final Plan. Id. at 158-59. Resorts International, whose estate no longer existed following the confirmation of the Reorganization Plan, was not a party to the malpractice action. Id. at 157.

The bankruptcy court held that it did not have jurisdiction over the adversary proceeding which set forth state-law claims and thus dismissed the proceedings. The trustee, however, appealed and the district court reversed, following which the district court certified its ruling for immediate appeal to us under 28 U.S.C. § 1292(b), and we granted leave to appeal. Resorts, 372 F.3d at 159-60. The case then came on before us to decide whether the bankruptcy court had jurisdiction over the state-law claims. Id. We discussed three

separate issues in our opinion.

First, we held that courts will give effect to retention-of-jurisdiction provisions that reorganization plans sometimes include only if there is bankruptcy court jurisdiction under 28 U.S.C. §§ 1334 and 157, as "neither the bankruptcy court nor the parties can write their own jurisdictional ticket." Resorts, 372 F.3d at 161. In other words, in the absence of statutory federal jurisdiction, "retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant." Id. Of course, "if there is jurisdiction, we will give effect to retention of jurisdiction provisions."[17] Id. Thus, we examined the question of whether the dispute fell within the bankruptcy court's subject matter jurisdiction. Id.

Second, we held that the state-law claims at issue were not "core proceedings" under section 157(b) because the proceeding did not invoke "a substantive right provided by title 11 or a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Id. at 163. We distinguished the circumstances in Resorts from the situation before the Court of Appeals for the Fifth Circuit in Southmark, 163 F.3d 925. In Southmark, the debtor filed a malpractice suit against the accounting firm that provided accounting services prior to plan confirmation. Resorts, 372 F.3d at 163. The Southmark court held that the suit was a core proceeding because the bankruptcy court must be able to ensure "that court-approved managers of the debtor's estate are performing their work conscientiously, and cost-effectively," and supervising court-appointed professionals "bears directly on the distribution of the debtor's estate" for "[i]f the estate is not marshaled and liquidated or reorganized expeditiously, there will be far less money available to pay creditors' claims." Id. (quoting Southmark, 163 F.3d at 931).

In distinguishing Southmark we made the following

_____

[17]Ernst & Young understandably does not argue that the Reorganization Plan's retention-of-jurisdiction provision is dispositive, an argument that it might have predicated on Section 9.01 of the plan which states that the bankruptcy court was to retain jurisdiction over, among other things, all disputes connected to the Final Plan or confirmation order and all adversary proceedings filed after the plan's confirmation date. Following Resorts, it is obvious that an argument anchored solely on this retention-of-jurisdiction provision could not have been successful.

observations:

> Unlike in Southmark, this claim arose post-plan confirmation. It does not directly affect the debtor or the liquidation of the estate's assets. Furthermore, the accounting firm's alleged malpractice in Southmark implicated the integrity of the entire bankruptcy process. Southmark's bankruptcy arose out of its involvement in Drexel Burnham Lambert, Inc.'s ill-fated junk bond investment. Southmark, 163 F.3d at 927-28. Southmark sought the appointment of an accounting firm to provide an objective, independent assessment of potential legal claims against third-parties. Id. Unbeknownst to Southmark, Drexel was one of the accounting firm's largest clients. Id. at 927-28. According to Southmark, the accounting firm committed malpractice by failing to satisfactorily investigate potential claims against Drexel. Id. Southmark alleged the accounting firm's breach of its court-appointed fiduciary duty prevented the estate from recovering from Drexel. Id. at 928. The accounting firm's failure to investigate Drexel implicated the core of the bankruptcy process. Its alleged malpractice was inseparable from the bankruptcy context. Here, Price Waterhouse's alleged malpractice, erroneously reporting that certain accrued interest belonged to one entity rather than to another and committing other errors in auditing and tax advice, even if true, is not a proceeding that could arise only in the bankruptcy context.

Resorts, 372 F.3d at 163.

Nevertheless, in Resorts we went on to indicate that it was unnecessary to resolve whether the case was a core or non-core proceeding for subject matter jurisdictional purposes because "[w]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction." Id. (quoting In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 266 (3d Cir. 1991)). It was not necessary to make a core versus non-core determination because as long as a proceeding satisfied the jurisdictional prerequisites to be considered a non-core "related to" proceeding, the "broadest of the potential paths to bankruptcy jurisdiction," it was an

29

extraneous exercise to decide whether the matter was core provided that jurisdiction, and not the bankruptcy court's adjudicative authority, was the sole issue before the court. See id. In other words, a determination of whether a matter is core or non-core is unnecessary in an inquiry of whether there is federal jurisdiction over a bankruptcy proceeding, as both categories of cases are within federal jurisdiction and the determination only impacts on the question of whether a bankruptcy court has the authority to enter final judgments and orders under section 157.[18] See id. It was implicit in our holding in Resorts that a case is "related to" a bankruptcy case even if the bankruptcy court could exercise core jurisdiction with respect to it. In this regard, we point out that section 157(c)(1) provides that a "bankruptcy judge may hear a proceeding that is not a core proceeding but that is

---

[18]We cannot take the same path as we did in Resorts because appellants challenge both federal jurisdiction under section 1334 and the bankruptcy court's authority to issue final orders under section 157, a question the resolution of which requires a determination of whether the proceeding was core or non-core. The only issue before us in Resorts was subject matter jurisdiction under section 1334.

In this case, there are essentially two procedural paths that can be transversed in resolving a dispute over jurisdiction and the adjudicative powers of the bankruptcy court. We can engage in a two-step analysis in which we first inquire whether there is federal jurisdiction over a proceeding by asking whether the case is "related to" the bankruptcy, which is the broadest category of cases over which there is federal jurisdiction. Then, if we find that the case passes that test, we would decide whether the case is a core matter, in which the bankruptcy court could issue final orders, or a non-core matter, in which the bankruptcy court could make only recommendations to the district court.

We, however, find this methodology inefficient in situations like the one before us because a finding that the case "aris[es] in" the bankruptcy would "kill two birds with one stone" inasmuch as such a finding conclusively would establish both subject matter jurisdiction and the bankruptcy court's authority to enter final orders. In that situation, there simply would be no reason to engage in the two-step inquiry we have described. Of course, if we determined that the case does not "aris[e] in" the bankruptcy proceedings, then, depending on which court is exercising jurisdiction when the determination is made, the appropriate court must determine if there is subject matter jurisdiction under the broadest jurisdictional hook of "related to" jurisdiction.

otherwise related to a case under Title 11." (Emphasis added.) It seems clear from that language, in particular the inclusion of "otherwise," that Congress believed that a core case was "related to" title 11 but that a case can be "related to" title 11 on a basis other than being a core case. Moreover, Congress's enumeration of core proceedings in section 157(b)(2), in ordinary understanding, lists matters that would be considered "related to" title 11 cases.

Third, we went on to discuss the limits of non-core "related to" jurisdiction. We first discussed "the seminal test for determining the boundaries of 'related to' jurisdiction in [Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)]," in which we held that federal courts have "related to" jurisdiction to hear a proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Resorts, 372 F.3d at 164. We, however, decided in Resorts that application of the Pacor test in the "post-confirmation context" was "problematic" inasmuch as "it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred," as generally "the confirmation of a plan vests all of the property of the estate in the reorganized debtor." Id. at 165 (internal quotation marks omitted).

In light of the circumstance that post-confirmation the debtor's estate will not exist, and in recognition of the need to confine bankruptcy court jurisdiction to appropriate limits, we recognized a new test to be applied in the "post-confirmation context" in which "the essential inquiry" is "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." Id. at 166-67. In other words, "[a]t the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process–there must be a close nexus to the bankruptcy plan or proceeding." Id. at 167. For instance, we held that "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." Id.

Applied to the facts of Resorts–where the trustee's principal allegation was that Price Waterhouse erroneously reported in its audit reports that accrued interest on the litigation trust belonged to the debtor rather than the trust–we held that the "proceeding lacks a close nexus to the bankruptcy plan or proceeding and affects only matters collateral to the bankruptcy process." Id. at 169. We explained our

decision as follows:

> The resolution of [the] malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; though it will affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims; and as stated, the jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157.

Id. We acknowledged that "in certain circumstances, accounting errors could have a sufficiently close nexus to the bankruptcy plan or proceeding to warrant exercising 'related to' jurisdiction post-confirmation," but, under the facts of Resorts, resolution of the claims will not require a court to interpret or construe the Reorganization Plan or the Trust Agreement and "[t]hough the Plan and Trust Agreement provide the context of the case, this bare factual nexus is insufficient to confer bankruptcy jurisdiction." Id. at 170.

### C. The Decisions of the Bankruptcy and District Courts

The bankruptcy court in this case concluded that there was federal jurisdiction because appellants' claims "aris[e] in" the bankruptcy case as the claims "implicate the integrity of the bankruptcy process," and, like the claims in Southmark, 163 F.3d 925, "the claims of professional malpractice were based on services provided during the bankruptcy, under the supervision of, and subject to the approval of, the bankruptcy court." Earned Capital, 331 B.R. at 218. The bankruptcy court determined that the "close nexus" test that Resorts discussed did not govern this case because "Resorts is unlike the situation here, where [appellants'] claims are claims against a court appointed professional for work performed during the bankruptcy case." Id. Further, because the state-law claims are claims "arising in" the bankruptcy case, the court determined "that [appellants'] Complaint against [Ernst & Young] is a core proceeding," and thus, under 28 U.S.C. § 157(b)(1), the court had full adjudicative power subject to appellate review by the district court. Id. at 218-20.

32

On appeal under 28 U.S.C. § 158, the district court affirmed the bankruptcy court's opinion and order. Specifically, with respect to jurisdiction, it held:

> We agree that [appellants'] state court action arises in bankruptcy and that it is a core matter. [Appellants'] claims of professional negligence were based on services provided during the bankruptcy, under the supervision of, and subject to the approval of, the bankruptcy court. As such, they implicate the integrity of the bankruptcy process. The state court action challenges the accountants' conclusion that the Debtor was insolvent, a conclusion endorsed by the bankruptcy court in its confirmation order. For these same reasons, the state court action has a 'close nexus' to the bankruptcy proceedings.

Geruschat, 346 B.R. at 125.

D.     Analysis

Appellants challenge two aspects of the decisions of the bankruptcy and district courts relating to subject matter jurisdiction and the bankruptcy court's final adjudicative authority. First, they argue that the courts erred in finding that the "close nexus" test was not applicable under their rationale that the improper conduct alleged in the state-law claims occurred during the bankruptcy proceedings.[19] Appellants believe that this conclusion was incorrect as they contend "application of the 'close nexus' test does not depend on when the malpractice itself occurs. To the contrary, the 'close nexus' test is

_____

[19]Actually, while the bankruptcy court indicated that the "close nexus" test did not apply, the district court found that "the state court action has a 'close nexus' to the bankruptcy proceedings." Geruschat, 346 B.R. at 125. However, it was not necessary for the district court to reach this conclusion inasmuch as it first held that appellants' "state court action arises in bankruptcy and . . . is a core matter," and, as we discuss, the "close nexus" test applies only when analyzing the case in the non-core "related to" context. In any event, even appellants treat the district court's decision as if the court erred in not applying the "close nexus" test. See Appellants' br. at 26 ("It was inappropriate for the district court not to address the 'close nexus' standard that this Circuit set forth in Resorts Int'l.").

33

applicable whenever a state lawsuit is removed to federal court on the basis of a bankruptcy case that is already closed by that point." Appellants' br. at 26. Second, appellants contend that the bankruptcy and district courts were wrong in concluding that this state-law action was a core proceeding under section 157(b), and thus appellants believe the bankruptcy court did not have the authority to enter final orders under section 157(c)(1). Id. at 28.[20]

After considering the parties' arguments, we will affirm the order of the district court and thus, in effect, the order of the bankruptcy court as we conclude that the bankruptcy court had core jurisdiction in this case. The bankruptcy and district courts were not required to address the "close nexus" test because the test was not applicable in this "arising in" proceeding. As we discussed in Resorts, the "close nexus" standard only applies for the purposes of determining whether a federal court has jurisdiction over a non-core "related to" proceeding in the post-confirmation context.[21] See Resorts, 372 F.3d at 164-67. Appellants seem to believe that any time a party files a case post-confirmation, the "close nexus" test is triggered. This is plainly not the case. While courts may choose to rely on "related to" jurisdiction because it is the broadest category of federal bankruptcy jurisdiction when examining their own jurisdiction, it certainly is not incumbent upon them to do so, because,

[20]Ernst & Young contends that appellants "waived their right to challenge that the litigation is a core matter," appellees' br. at 17, because appellants did not file a timely statement under Bankruptcy Rule 9027(e)(3). In view of our result we have no need to consider this argument and do not do so.

[21]We recently concluded in In re Shenango Group Inc., No. 05-4805, __ F.3d __, 2007 WL 2505585 (3d Cir. Sept. 6, 2007), that a post-confirmation dispute over whether a reorganization plan obligated a reorganized debtor to fund a pension plan was "related to" a bankruptcy proceeding, and, thus, the district court properly affirmed the order of the bankruptcy court in which it exercised its "related to" jurisdiction. In that case, we found that the dispute did have a "close nexus" to the bankruptcy under Resorts as its resolution required the court to interpret the plan's provision relating to the obligation of the debtor, who was a party to the suit, to fund pension benefit increases. Id. at *3-4. Our decision in Shenango Group does not affect this case as here the issue is not whether the suit is "related to" the bankruptcy, but, instead, whether it is "arising in" the bankruptcy.

34

as occurred here, a party may argue and a court may decide that a proceeding falls within one of the narrower categories of jurisdiction, such as "arising in" jurisdiction, in which case "related to" jurisdiction and the corresponding "close nexus" test are not implicated.

We further find that the courts' conclusion that there was "arising in" jurisdiction was correct. "[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." Stoe, 436 F.3d at 218. In Resorts, in distinguishing the circumstances of the case from those in Southmark, we explained in what circumstances and on what legal basis a claim of professional malpractice for work performed during the bankruptcy could support "arising in" core jurisdiction. See Resorts, 372 F.3d at 163. Unlike those in Resorts, the material facts of the case before us are indistinguishable from those in Southmark.

First, in Resorts we distinguished the case from Southmark because the state-law claims in Resorts "arose post-plan confirmation." See id. Here, however, appellants in their complaint allege that their claims, like the claims in Southmark, arose pre-confirmation inasmuch as the conduct on which they predicate the claims occurred during the bankruptcy process. Specifically, their complaint alleges that in reliance upon the negligent work Ernst & Young performed during the bankruptcy, the bankruptcy court wrongly deemed the Debtors to be insolvent and caused the liquidation of the estate's assets in a manner that contravened the Amended Plan.

Second, in our case, just as was true in Southmark, Ernst & Young's "alleged malpractice . . . implicated the integrity of the entire bankruptcy process" and the "alleged malpractice was inseparable from the bankruptcy context." Resorts, 372 F.3d at 163. The bankruptcy court appointed Ernst & Young to review the Debtors' financial records and prepare the financial schedules needed for the bankruptcy. According to appellants' allegations in their complaint, as a result of the work that Ernst & Young performed during the bankruptcy proceedings and its representations to the bankruptcy court, the bankruptcy court deemed the Debtors to be insolvent. This conclusion led to the formation of Seven Fields, a corporation organized, according to the Amended Plan, to "achieve the goal of full payment" of the unsecured, nondischargeable debt due appellants. Certainly this aspect of the plan, based at least in part on Ernst &

35

Young's representations that the Debtors were insolvent, was a significant factor in bringing about the court's confirmation of the plan. Yet, thereafter, according to the complaint, Ernst & Young represented that Seven Fields had a large debt, which, according to the complaint is not the case, and Seven Fields was compelled to sell its properties in a manner that was not in appellants' best economic interests, contrary to the court-approved Amended Plan's provisions. Moreover, the bankruptcy court approved the stipulation between Seven Fields and Ernst & Young providing for the fees paid to Ernst & Young for its accounting work during the bankruptcy proceedings.[22] Supp. App. at 55-57.

The Court of Appeals for the Fifth Circuit in Southmark explained why this type of misconduct and relationship to the bankruptcy court falls within the "arising in" jurisdiction of the federal courts:

> In this case, the professional malpractice claims alleged against [the defendants] are inseparable from the bankruptcy context. A sine qua non in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors. The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively. Bankruptcy Code provisions describe the basis for compensation, appointment and removal of court-appointed professionals, their conflict-of-interest standards, and the duties they must perform. See generally 11 U.S.C. §§ 321, 322, 324, 326-331. Although standards for the conduct of court-appointed professionals, the breach of which may constitute bankruptcy malpractice, are not comprehensively expressed in the statute, the Code

---

[22]On September 15, 1989, the bankruptcy court approved the stipulation between Ernst & Young and Seven Fields and entered an order stating that Ernst & Young was due $125,000 in fees in settlement of its $210,000 claim. Earned Capital, 331 B.R. at 226-27; Supp. App. at 55-57.

need not duplicate relevant, also-applicable state law.
It is evident that a court-appointed professional's
dereliction of duty could transgress both explicit Code
responsibilities and applicable professional malpractice
standards. For instance, in <u>Billing v. Ravin, Greenberg</u>
<u>& Zackin, P.A.</u>, 22 F.3d 1242 (3d Cir. 1994), the
professional malpractice allegations included the
attorneys' failure to comply with court orders and to
submit a plan of reorganization to the bankruptcy
court. Award of the professionals' fees and
enforcement of the appropriate standards of conduct
are inseparably related functions of bankruptcy courts.

Supervising the court-appointed professionals also
bears directly on the distribution of the debtor's estate.
If the estate is not marshaled and liquidated or
reorganized expeditiously, there will be far less money
available to pay creditors' claims. Excessive
professional fees or fees charged for mediocre or,
worse, phantom work also cause the estate and the
creditors to suffer . . . . A malpractice claim like the
present one [against court-appointed professionals]
inevitably involves the nature of the services
performed for the debtor's estate and the fees awarded
under superintendence of the bankruptcy court; it
cannot stand alone.

<u>Southmark</u>, 163 F.3d at 931. Other courts of appeals, including this
court, have reached similar conclusions. <u>See</u> <u>Grausz v. Englander</u>,
321 F.3d 467, 471 (4th Cir. 2003) (finding that legal malpractice
claim against firm for alleged misconduct in bankruptcy case is a
claim "arising in" the bankruptcy case); <u>In re Ferrante</u>, 51 F.3d 1473,
1476 (9th Cir. 1995) (holding that action against trustee for
misconduct in administering estate was a core proceeding concerning
the administration of the bankruptcy estate); <u>see also</u> <u>Billing</u>, 22 F.3d
at 1245, 1252-53 (while not directly addressing whether a legal
malpractice suit against bankruptcy counsel constitutes a core
proceeding as parties agreed that it does,[23] we recognized that the

---

[23]Of course, the parties' consent cannot establish the bankruptcy
court's jurisdiction, and if we disagreed with the parties and believed
that the court did not have jurisdiction, or even that the jurisdiction that
it did have was "related to" but not core jurisdiction, we would say so

37

"malpractice suit mirrors [debtors'] objections to the allowance of attorneys' fees," the resolution of which are within the bankruptcy court's "explicit jurisdiction to award fees for bankruptcy counsel and other supervisory powers as to bankruptcy counsel").

As Ernst & Young points out,

[n]othing is more important than the integrity of the bankruptcy process . . . . [T]he integrity of the process goes to the heart of the administration of a bankruptcy case. Furthermore, few issues are as important in the bankruptcy process as the bankruptcy court's conclusion as to the solvency of a debtor. The solvency analysis is the cornerstone of the distribution plan. Here, both the integrity of the bankruptcy process and the solvency of the Debtors have been drawn into question.

Appellees' br. at 23 (citations omitted). In this regard, we have no doubt that the bankruptcy and district courts correctly found that appellants asserted their alleged malpractice claims in a core proceeding that "aris[es] in" the bankruptcy case.

In addition to the reasoning of Southmark, we also note that section 157 specifically provides that core proceedings include "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2)(A) and (O). Such matters are at issue here. Appellants allege that Ernst & Young's negligence and misrepresentations caused the sale of Seven Fields's assets in a manner that was not in their best economic interests, contrary to the Amended Plan's provisions requiring that Seven Fields would be "managed, improved, developed and sold, etc. where appropriate, to the end that all creditors will eventually achieve maximum returns." App. at 22. In sum, it is clear to us that a malpractice action against an accountant for misconduct during the bankruptcy on which the bankruptcy judge relied in confirming the plan of reorganization, and in reliance on which the bankruptcy court approved the fees to the accountants, and on which appellants' representatives relied to their detriment in selling the assets to pay their claims, in a manner that

_____

even in the absence of a party raising the jurisdictional issue on the appeal.

38

contravenes the terms of the reorganization plan, constitutes a core proceeding, more specifically a proceeding "arising in" the bankruptcy, which is subject to federal jurisdiction and the final adjudicative authority of the bankruptcy court.[24]

Because we have concluded that the bankruptcy and district courts correctly found "arising in" core jurisdiction so that the "close nexus" test did not apply, we need not resolve the issue appellants raise relating to the applicability of the "close nexus" test in the "related to" post-confirmation context. We, however, will take this opportunity to address the division among courts in this circuit with respect to this issue that has developed in the wake of Resorts. Appellants raise the question of whether in cases in which the bankruptcy and district courts can be exercising only "related to" jurisdiction, the Resorts "close nexus" test applies whenever the complaint is filed post-confirmation or must the conduct also occur post-confirmation to trigger the test? In other words, in analyzing a court's "related-to" jurisdiction, is pre-confirmation conduct alleged in a complaint that is filed post-confirmation evaluated under the Pacor test or the Resorts "close nexus" test?

Appellants believe that "application of the 'close nexus' test does not depend on when the malpractice itself occurs." Rather, in their view, the crucial inquiry is whether the bankruptcy case is closed at the time the claim is removed to it. Appellants' br. at 26. Accordingly, appellants contend that the test applies whenever there is a post-confirmation action filed, presumably even an original proceeding as distinguished from a removed case which is the situation here. Ernst & Young, on the other hand, argues that the "close nexus" test under Resorts applies only when "the alleged wrongdoing took place post-confirmation." Appellees' br. at 15. Bankruptcy and district courts within this circuit have rendered inconsistent opinions on this point since Resorts. Compare In re EXDS, Inc., 352 B.R. 731, 735 (Bankr. D. Del. 2006), and In re LGI, Inc., 322 B.R. 95, 102-03 (Bankr. D.N.J. 2005), in which the courts

---

[24]Appellants also argue that the claims are not core proceedings because they are "not based on any right created by the federal bankruptcy law," but, instead, are "based exclusively on rights existing under state law." Appellants' br. at 30. This distinction, however, is not determinative as section 157 provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

stated the test in terms of when the cause of action arose or the conduct occurred, with Jazz Photo Corp. v. Dreier LLP, No. Civ. A. 05-5198DRD, 2005 WL 3542468, at *5-6 (D.N.J. Dec 23, 2005), and In re LaRoche Indus., Inc., 312 B.R. 249, 257 (Bankr. D. Del. 2004), in which the courts stated the test in terms of when the cause of action was filed. This division in results makes it important for us to address the issue.

We start this point with a further discussion of Pacor, 743 F.2d 984, the case that set forth the test used to determine whether a proceeding is "related to" a bankruptcy that was applied in all circumstances until we established the limitations on the test in the "post-confirmation context" in Resorts. In Pacor, John and Louise Higgins brought a suit in a state court against Pacor, a chemical supplies distributor, for injuries allegedly caused by exposure to asbestos contained in Pacor's products. Id. at 986. Pacor filed a third-party complaint in the state court against the asbestos manufacturer, Johns-Manville. Id. Johns-Manville subsequently filed Chapter 11 bankruptcy proceedings in the Southern District of New York. Id. Pacor then sought to remove the state court case to the bankruptcy court in the Eastern District of Pennsylvania. The Eastern District bankruptcy court remanded the entire state-court case to the state court. On Pacor's appeal, the district court affirmed with respect to the Higgins's case against Pacor as it held that it was not "related to" the Mansville bankruptcy.[25] Pacor then appealed to us. Id. In affirming the district court's order affirming the bankruptcy court, we articulated what became the seminal test for determining whether a civil proceeding is "related to" a bankruptcy:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . .  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

---

[25]The district court held that the third-party complaint was "related to" the bankruptcy so it did not remand that aspect of the case to the state court.

Id. at 994 (internal citations omitted).

Then came Resorts. We reiterate that Resorts involved a claim for professional malpractice and breach of contract brought against Price Waterhouse for accounting services performed for a litigation trust formed after the bankruptcy court issued an order confirming the Reorganization Plan. Resorts, 372 F.3d at 156-57. Almost seven years after the bankruptcy court confirmed the plan, the litigation trust brought suit against Price Waterhouse on account of its post-confirmation services. Id. at 159. We held that the traditional test in Pacor, a case involving claims brought pre-confirmation, was "problematic" in the "post-confirmation context" inasmuch as "it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." Id. at 165. Thus, because confirmation of a plan in which all property of the estate is vested in the reorganized debtor eliminates the existence of the estate, there never will be jurisdiction over a post-confirmation dispute under a literal interpretation of the Pacor test. Id.

In an attempt to balance Congress's intent to grant bankruptcy courts "comprehensive jurisdiction so that they could deal efficiently and expeditiously with matters connected with the bankruptcy estate" with the jurisdictional limitations on non-Article III bankruptcy courts, id. at 163-64 (internal quotation marks omitted), we developed the test to be applied "[a]t the post-confirmation stage":

> As stated, the jurisdiction of the non-Article III bankruptcy courts is limited after confirmation of a plan. But where there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate.

Id. at 168-69.

After our present consideration of Resorts, we are satisfied that the "close nexus" test is applicable to "related to" jurisdiction over any claim or cause of action filed post-confirmation, regardless of when the conduct giving rise to the claim or cause of action

41

occurred. We reach this conclusion because in <u>Resorts</u>, though we were dealing with post-confirmation rather than pre-confirmation conduct, we focused on the point of time in which the cause of action was instituted: whether it was filed in the "post-confirmation stage," i.e., the "post-confirmation context." Furthermore, we did not indicate that the test should be confined to situations in which the conduct giving rise to the complaint occurred post-confirmation. Moreover, since <u>Resorts</u>, we have stated that we use the test to determine whether "'related to' jurisdiction . . . exist[s] at the <u>post-confirmation stage</u>," <u>Stoe</u>, 436 F.3d at 216 n.3 (emphasis added). Most recently in <u>In re Shenango Group Inc.</u>, No. 05-4805, __ F.3d __, 2007 WL 2505585, at *3-4 (3d Cir. Sept. 6, 2007), we applied the <u>Resorts</u> "close nexus" test in a "related to" jurisdictional inquiry over a "post-confirmation dispute." Additionally, we note that the Court of Appeals for the Ninth Circuit, which adopted the "close nexus" test that we described in <u>Resorts</u>, has stated that the test applies when "the proceeding arises post-confirmation" and applied the "close nexus" test with respect to claims raised post-confirmation involving pre-confirmation conduct. <u>See</u> <u>In re Pegasus Gold Corp.</u>, 394 F.3d 1189, 1193-94 (9th Cir. 2005).

Importantly, limiting the "close nexus" test to cases involving only post-confirmation conduct would be inconsistent with our reasoning to depart from <u>Pacor</u> in <u>Resorts</u>. In <u>Resorts</u>, we indicated that our central reason to depart from the <u>Pacor</u> test in the post-confirmation context was that there no longer is an estate that can be affected so application of the <u>Pacor</u> test was "problematic." <u>See</u> <u>Resorts</u>, 372 F.3d at 164-65. The time when the conduct raised in the post-confirmation complaint occurred is of no consequence in this analysis as regardless of whether the conduct was post-confirmation or pre-confirmation, there would not be an estate at the post-confirmation stage. For these reasons, we conclude that with respect to "related to" jurisdiction, the <u>Pacor</u> test applies in all disputes raised pre-confirmation and the "close nexus" test applies in all disputes raised post-confirmation, regardless of when the conduct alleged in the complaint occurred.[26]

---

[26]We emphasize that this distinction and application of the respective tests applies only when the parties seek to establish jurisdiction on the grounds that the cause of action is "related to" the bankruptcy, the broadest jurisdictional hook. We decided in <u>Resorts</u> that in such situations the court must impose limits in the post-confirmation context. In contrast, cases that "aris[e] in" the bankruptcy case must

## V. CONCLUSION

For the foregoing reasons, we will affirm the district court's memorandum order of July 14, 2006, affirming the bankruptcy court's order of September 2, 2005, dismissing appellants' complaint.

---

satisfy a stringent standard in which the matter must have an intimate connection to the bankruptcy proceedings, and thus the stage at which the complaint is filed is not determinative.